1  5STEPHEN M. HAYES (SBN 83583)
STEPHEN P. ELLINGSON (SBN 136505)
2  JAMIE A. RADACK (SBN 221000)
HAYES SCOTT BONINO ELLINGSON
3  GUSLANI SIMONSON & CLAUSE LLP
999 Skyway Road, Suite 310
4  San Carlos, CA 94070
Telephone: (650) 637-9100
5  Facsimile: (650) 637-9101

6  Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  DEBRA COHEN TUDOR,                          CASE NO.

11                 Plaintiff,
                                               **DEFENDANT STATE FARM GENERAL**
12        vs.                                  **INSURANCE COMPANY'S NOTICE OF**
                                               **REMOVAL OF CIVIL ACTION UNDER 28**
13  STATE FARM GENERAL INSURANCE               **U.S.C. SECTIONS 1332 AND 1441a**
COMPANY, an Illinois corporation; and         **[DIVERSITY JURISDICTION];**
14  DOES 1 through 50, inclusive,              **DEMAND FOR JURY TRIAL**

15                 Defendants.

16

17        **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

18        PLEASE TAKE NOTICE that defendant State Farm General Insurance Company

19  (hereinafter "State Farm") hereby removes to this Court the state action described below:

20        1.     State Farm is a defendant in the civil action commenced on January 12, 2022 in the

21               Superior Court of the State of California, County of Santa Clara, Case No.

22               22CV393342, entitled Debra Cohen Tudor v. State Farm General Insurance

23               Company.   A copy of the complaint is attached hereto as Exhibit "1" and is

24               incorporated as part of this notice.  The complaint was served on State Farm on

25               January 24, 2022.

26        2.     State Farm filed its answer to plaintiff's complaint in state court on February 22,

27               2022.  A true and correct copy of its answer to plaintiff's complaint is attached

28               hereto as Exhibit "2" and is incorporated as part of this notice of removal and

1915439                              - 1 -

1    removal.

2    3.    This action is a civil action of which this Court has original jurisdiction under 28

3    U.S.C. section 1332 and is one that may be removed to this Court by State Farm

4    pursuant to the provisions of 28 U.S.C. section 1441, subdivision (a), in that it is a

5    civil action wherein the matter in controversy exceeds the sum of $75,000 exclusive

6    of interest and costs, and is between citizens of different states.

7    4.    The fact that the amount in controversy exceeds the minimum requirement for

8    diversity jurisdiction can be determined by the nature of the claims and the amount

9    and type of the damages sought in the complaint.  Plaintiffs owns a home at 3433

10    Wheeling Drive in Santa Clara, California.  (Complaint, ¶ 4.)  In or about January

11    2021, plaintiff's home was damaged by water that discharged from the dishwasher.

12    (Complaint, ¶ 10.)  The home allegedly suffered significant damage, including mold

13    growth.  (Id.)

14    5.    Plaintiffs were insured by State Farm with a "Dwelling" policy limit of $655,200 for

15    the dwelling and separate limits for related coverages.  (Complaint, ¶¶ 8 – 9.)  "Loss

16    Of Use" coverage provided benefits for actually incurred extra expenses during the

17    time to repair the home, subject to a time limit based on the length of the repair

18    process or a maximum of 24 months.  (Complaint, ¶ 13.)  Plaintiffs contend they

19    sustained substantial damage, including cost of repair and loss of use.  (Complaint, ¶

20    25.)  Plaintiff requested Alternative Living Expenses ALE under the Loss of Use

21    coverage for the rental of a six bedroom three bath 2,500 square-foot house in a safe,

22    nearby neighborhood.  A review of the Trulia, Zillow and Rent.com websites for

23    homes near plaintiff's home reveals the monthly rent for such a home would be

24    between $4,000 and more than $8,000 per month.

25    6.    The complaint does not allege a specific amount that plaintiff is claiming for the cost

26    to repair the damage from the leaking dishwasher.  Based on photographs of the

27    damage in the claim file, the repair amount likely would be between $25,000 and

28    $40,000 or more.  Based on an estimated length of the repair process of three to four

months, plaintiff's ALE claim would be $12,000 and $32,000.  Accordingly, plaintiff's claim for unpaid policy benefits would total at least between $37,000 to $72,000.

7.    Plaintiff also seeks general damages and prejudgment interest based on State Farm's handling of their claims.  (Complaint, p. 17:23-28.)

8.    Plaintiff also seeks recovery of the attorney fees and costs for this action.  (Complaint, p. 17:23-28.)  The claim for attorney fees and costs constitutes an element of plaintiffs' special damages on a theory that plaintiff incurred these so-called *Brandt* fees to recover unreasonably withheld policy benefits.  *Brandt v. Superior Court,* 37 Cal.3d 813 (1985).

9.    Plaintiff also seeks punitive damages.  (Complaint, p. 17:23-28.)  Even if the Court adopts a "due process multiplier" of just one times actual damages, the amount in controversy would be more than $75,000. *Johnson v. Ford Motor Co*., 35 Cal.4th 1191 (2005); *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413 (2007).

10.    Plaintiff alleges she is a disabled person within the meaning of California Civil Code section 1761(g) and for that reason also seeks treble damages pursuant to California Civil Code section 3345.

11.    At the time of the commencement of this action, and at all times since, State Farm has been, and still is, a corporation of the State of Illinois, being incorporated under the laws of Illinois, and has had and continues to have its principal place of business in Illinois. (Complaint, ¶ 2.)  Plaintiff is and continues to be a resident and citizen of the State of California.  (Complaint, ¶ 1.)

12.    This action was brought in the State of California.  This corporate defendant is not, at the time of the institution of this action, and is not now, a corporation incorporated under the laws of the State of California, and does not have at the time of the institution of this action, and does not have now, its principal place of business in California.

1

## **DEMAND FOR JURY TRIAL**

2

State Farm General Insurance Company hereby demands a trial by jury.

3

4     Dated:  February 23, 2022          HAYES SCOTT BONINO ELLINGSON
                                         GUSLANI SIMONSON & CLAUSE LLP
5

6                                        By_____

7                                            STEPHEN M. HAYES
                                             STEPHEN P. ELLINGSON
8                                            JAMIE A. RADACK
                                             Attorneys for Defendant
9                                            STATE FARM GENERAL INSURANCE
                                             COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

E-FILED
1/12/2022 3:00 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV393342
Reviewed By: R. Guevara

1 | BMCA LAW GROUP, a P.C.
BRUCE M. COHEN (CA Bar No. 084318)
2 | *bcohen@bmcalaw.com*
JULIA MACHAI COHEN (CA Bar No. 252417)
3 | *jvmcohen@bmcalaw.com*
11693 San Vicente Blvd., #804
4 | Los Angeles, CA  90049
Telephone:    (424) 287-5400
5 | Facsimile:    (424) 287-5401

6 | Attorneys for Plaintiff DEBRA COHEN TUDOR

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SANTA CLARA**

10 |

11 | DEBRA COHEN TUDOR, an individual,  |  CASE NO. _____22CV393342_____

12 |                     Plaintiff,

13 |          v.  |  **COMPLAINT FOR**

14 | STATE FARM GENERAL  |  1)    **BREACH OF CONTRACT; AND**
2)    **INSURANCE BAD FAITH**
15 | INSURANCE COMPANY, an Illinois  |        **/TORTIOUS BREACH OF**
corporation; and DOES 1 through 50,  |        **IMPLIED COVENANT**
16 | inclusive,

17 |                     Defendants.

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    Plaintiff alleges as follows:

2    **PARTIES, JURISDICTION AND VENUE**

3    1.    Plaintiff DEBRA COHEN TUDOR ("Plaintiff") is, and at all relevant times

4    was, an individual residing in the State of California, County of Santa Clara.

5    2.    Plaintiff is, and at all relevant times was, a "Disabled Person" under Federal

6    and California law, including California Civil Code section 1761(g).

7    3.    Plaintiff is informed and believes, and on that basis alleges, that Defendant

8    State Farm General Insurance Company ("State Farm") is, and at all relevant times was,

9    an Illinois corporation authorized by the California Insurance Commissioner to transact

10    insurance business in California and engaged in the business of providing insurance to

11    persons and entities in the County of Santa Clara, State of California.

12    4.    At all relevant times Plaintiff has been the homeowner of the residence

13    located at 3433 Wheeling Drive in Santa Clara, California (the "Insured Property"), which

14    at all relevant times was insured under a homeowners' policy issued by State Farm.

15    5.    The names and true capacities, whether individual, corporate or otherwise,

16    of defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who

17    therefore sues said defendants by such fictitious names. Plaintiff is informed and believes,

18    and on the basis of such information and belief alleges, that defendants Does 1 through 50,

19    inclusive, or some of them, participated in some or all of the acts as hereinafter alleged and

20    are liable to Plaintiff. State Farm and Does 1 through 50, inclusive, are sometimes

21    hereinafter collectively referred to as "Defendants."

22    6.    Venue in this County of Santa Clara is proper because, among other things,

23    the Insured Property is located in this County, Plaintiff suffered her losses and damages in

24    this County, and a substantial portion of Defendants' breaches and misconduct occurred in

25    in this County.

26    7.    The amount of damages and losses suffered by Plaintiff exceeds the

27    jurisdictional threshold of this Court.

28

**GENERAL ALLEGATIONS**

8.     Since approximately 1998, Plaintiff has had a Homeowners' Policy with State Farm. For the period of March 30, 2020 to March 30, 2021, State Farm issued its Policy No. 05GL60896, form FP-7955 CA modified by, *inter alia*, Endorsement FE-3422 and Amendatory Endorsement FE-1386 (the "Policy") with regard to the Insured Property and with Plaintiff as the named insured. Plaintiff fully and timely paid all insurance premiums due under the Policy and otherwise complied with its terms and conditions.

9.     Among other things, the Policy provided "Dwelling" coverage with policy limits of $655,200, "Building Code Upgrade" coverage $163,800, "Extended Replacement Cost" coverage, Personal Property coverage, as well as Loss-Of-Use /Living Expense coverage. A true and correct copy of the Policy is attached hereto as **Exhibit A**.

10.     Commencing in or about January 2021 (and less than one year prior to the filing of this action), with the Policy in full force and effect, Plaintiff has suffered loss arising from direct physical loss or damage to the Insured Property based on a sudden and accidental discharge of water from a dishwasher, discharging a significant amount of water into the flooring, the wall and the wooden cabinets in the kitchen at the Insured Property, as well as into the wall and hardwood flooring in the entry hallway on the opposite side of the wall behind the dishwasher.

11.     After discovering the water damage, Plaintiff called a plumber. To the best of Plaintiff's understanding, the plumber put a stop to the water discharge by sealing the part of the dishwasher where water had discharged, and shutting off the water supply to the dishwasher by installing an extra stop valve which serviced only the dishwasher's water supply line and turning that stop valve to the closed position. After the plumber's visit, Plaintiff never used the dishwasher again. The water discharge did not happen again after that.

12.     The kind of loss or damage suffered by the Insured Property is covered under the Policy.

13.     The Policy provides, among other things, the following coverages:

**SECTION I. LOSSES INSURED**

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

\*\*\*

**COVERAGE B – PERSONAL PROPERTY**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

[…]

**12. Sudden and accidental discharge or overflow of water** or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance. […]

This peril does not include loss:

    a.  to the system or appliance form which the water or steam escaped;

    […]

    d.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

\*\*\*

**COVERAGE C - LOSS OF USE**

**1. Additional Living Expense**. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your

standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

[…]

***

**SECTION I - LOSSES NOT INSURED**

1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below.

**This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded**.

2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

      g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

      h. corrosion, electrolysis or rust;

      i. wet or dry rot;

**However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.**

4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves

isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

**c. Water**, meaning:

(5) **continuous or repeated seepage or leakage of water** or steam from a: (a) heating, air conditioning or automatic fire protective sprinkler system; (b) household appliance; or (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

[…] [emphasis added]

14.     After Plaintiff reported her claim to State Farm (on or about March 8, 2021), State Farm initially advised her that it would cover the claim in whole or in part. Among other things, on March 15, 2021, State Farm advised Plaintiff in writing that "the cost associated with repairing the failure of your dishwasher is not covered under your policy. **However, the resulting water damage is covered.**" [emphasis added] A true and correct copy of State Farm's March 15, 2021 correspondence to Plaintiff is attached as **Exhibit B**. In addition, on March 15, 2021, State Farm Adjuster Cedric McCray left a telephone message for Plaintiff verbally stating that "we will extend coverage for the resulting water damages".

15.     Before State Farm Adjuster Cedric McCray advised Plaintiff that the water damage would be covered, he reviewed a photograph of the dishwasher cavity which was taken with the dishwasher pulled out. This photograph was taken by Plaintiff and sent to State Farm on March 12, 2021. Other than reviewing this photograph, the cause and extent of the dishwasher's failure was never investigated by State Farm, whether before or after the aforesaid March 15, 2021 letter.

16.     In the second March 15, 2021 letter (addressing the proposed retention of State Farm's recommended vendor ServiceMaster by Plaintiff), State Farm advised Plaintiff that "State Farm is not exercising its option under the insurance policy to repair

1   or replace damaged property. Instead, State Farm will pay to repair the damaged building

2   property covered by your policy, less your deductible, subject to your policy's terms and

3   conditions." A true and correct copy of the second March 15, 2021 letter from State Farm

4   is attached hereto as **Exhibit C**. At that time, Plaintiff was also advised that State Farm had

5   approved the remediation proposal of its "preferred" remediation vendor ServiceMaster

6   and that it would pay for it.

7        17.    On or about March 10, 2021, State Farm had sent out ServiceMaster to the

8   Insured Property, purportedly to investigate and document the loss and damage and to

9   produce a remediation proposal. ServiceMaster took photographs of the conditions in the

10  kitchen, including photographs of moisture readings made with a moisture meter.

11  ServiceMaster informed Plaintiff at the time that the moisture reading was high with regard

12  to the flooring closest to the dishwasher (and, indeed, the flooring had visibly warped in

13  that area), and that the moisture readings were significantly lower (but still indicating a

14  moderate presence of moisture) in the areas around the cabinets nearest the dishwasher,

15  with yet lower (almost normal) moisture readings around the opposing cabinets located

16  approximately 4 feet away from the dishwasher.

17       18.    Plaintiff was under the impression that, during its visit to the Insured

18  Property, ServiceMaster would collect any and all data and information that State Farm

19  might require regarding the water damage and other conditions of the Insured Property and

20  that ServiceMaster would document and report its findings to both State Farm and Plaintiff.

21  However, Plaintiff later learned that ServiceMaster's purported investigation was rather

22  perfunctory and incomplete, including apparently failing to document all but a few of the

23  moisture readings and neglecting to investigate the conditions of the dishwasher cavity

24  itself.

25       19.    After ServiceMaster's visit to the Insured Property on March 10, 2021, State

26  Farm advised Plaintiff that it would be sending out ServiceMaster for a second visit in

27  order to investigate and photograph the dishwasher cavity. The State Farm representative

28  told Plaintiff that State Farm was interested in seeing whether there was any dry rot in the

dishwasher cavity, because the Policy allegedly excluded dry rot and because its presence allegedly might have suggested a progressive and ongoing exposure to water, rather than a sudden and accidental water event.

20.     Of course, Plaintiff consented to have ServiceMaster return for a second visit to investigate and photograph the dishwasher cavity. However, on March 12, 2021, shortly before its scheduled arrival time to the Insured Property, ServiceMaster contacted Plaintiff and advised that State Farm had again contacted them and had advised that they were no longer willing to pay ServiceMaster to come out for that second visit.   ServiceMaster therefore refused to come out to the property unless Plaintiff agreed to pay for the visit, which Plaintiff declined.

21.     ServiceMaster also told Plaintiff that all they had been asked to do during this second visit was to pull out the dishwasher and photograph the interior cavity behind it and that this might be something Plaintiff could do without them. Plaintiff followed that advice. She had a friend help her pull out the dishwasher. She did not observe any dry rot. She then photographed the cabinet cavity where the dishwasher had been nested and sent a photograph of it to State Farm. This occurred on March 12, 2021.

22.     On or about March 15, 2021, both Plaintiff and ServiceMaster were advised that State Farm would cover ServiceMaster's proposed work under the Policy. On March 15, 2021, Plaintiff received a voicemail from ServiceMaster stating that "I was able to speak with the adjuster, and he approved coverage." Also on or about March 15, 2021, State Farm advised plaintiff via a voice mail message that, after reviewing the photograph of the dishwasher cavity, State Farm was "extending coverage" for the claim, while noting that any dry rot would allegedly be excluded.

23.     To date, Plaintiff has not been advised by State Farm of any evidence of dry rot, and she is not aware of any such condition.

24.     On or about March 24, 2021, ServiceMaster circulated environmental consultants RegasGroup's written report and lab findings which indicated that the water-damaged kitchen flooring contained asbestos and that the countertop sitting atop the water-

1   damaged kitchen cabinets contained lead. Because the flooring and countertops had to be
2   removed in order to pull out the water-damaged cabinets for drying, and because the
3   asbestos and lead findings meant that a licensed environmental hazard abatement
4   contractor would be required to perform the removal of the flooring and countertops,
5   Plaintiff is informed and believes that these environmental hazard findings increased the
6   scope and the expense of the required remediation, repair and replacement effort.

7       25.     Plaintiff became concerned that during the work to abate the water damage
8   and the hazardous materials, dry out the kitchen and then repair and/or replace the flooring,
9   the walls and the cabinets and restore the kitchen, the Insured Property might be rendered
10  "uninhabitable." On March 23, 2021, Plaintiff wrote to State Farm expressing that concern
11  and seeking confirmation that State Farm would provide her with Loss-of-Use / Additional
12  Living Expense coverage (such as alternate housing) in the event that her house became
13  uninhabitable during the abatement and subsequent repairs.

14      26.     Having determined that asbestos and lead environmental hazard abatement
15  would be required, on March 24, 2021, pursuant to her right to select repair contactors of
16  her choice, in preparation for the environmental hazard abatement of the recently
17  discovered asbestos and lead, Plaintiff wrote to State Farm requesting them to approve her
18  choice of the firm American Air Testing to perform post-abatement clearance testing, and
19  including a proposed contract from American Air Testing. Compared to a later post-
20  abatement clearance proposal received from environmental consultants RegasGroup,
21  American Air Testing's proposal was more expensive.

22      27.     The Policy does not define the word "uninhabitable." Plaintiff is informed
23  and believes that her disability should be considered as one of the factors in determining
24  habitability in the circumstances on this case. Based on the local rental conditions and cost
25  of living in and around Santa Clara, Plaintiff is informed and believes that it could have
26  cost State Farm several thousand dollars per month to provide Plaintiff with comparable
27  housing in the event that the Insured Property became uninhabitable during the repairs, if
28  State Farm had continued to agree to extend coverage for the claim.

28.    Unfortunately, almost immediately following the lead and asbestos report, the request to approve American Air Testing's post-abatement clearance work, and Plaintiff's letter inquiring about alternate housing, State Farm arbitrarily changed its coverage position. On or about March 24, 2021 Plaintiff was advised that her claim had been reassigned to a new State Farm representative, Ms. Sharon Siu.

29.    From the outset of her handling Plaintiff's claim, the new representative, Ms. Sharon Siu, expressed negative views about Plaintiff's claim. For instance, contrary to the Policy and Plaintiff's reasonable expectations as an insured, Ms. Siu flatly stated that State Farm does not deem a dwelling "uninhabitable" unless it is without power, toilet, or running water, and that she did not think Plaintiff was entitled to ask for alternative housing during the repair—despite not having completed a full investigation into Plaintiff's claim and despite the absence of sufficient information on the scope and duration of the repair and replacement work that might be required. Also contrary to the Policy and Plaintiff's reasonable expectations as an insured, as well as State Farm's own brochure regarding its coverage and State Farm's representations to the California Department of Insurance, Ms. Siu told Plaintiff that State Farm does not provide coverage for claims relating to water discharge from dishwashers.

30.    On Friday, March 26, 2021, at about 7:25 pm, Ms. Siu left a voicemail for Plaintiff, stating that she would like to contact Plaintiff "regarding just the scope of the repair, and evaluate possibly an estimate". Shortly thereafter, Plaintiff called Ms. Siu, and they arranged for Ms. Siu to visit the Insured Property on the morning of Monday, March 29, 2021. During the March 26 evening phone call, Ms. Siu stated that when she visited on March 29 she might want to look at the dishwasher cavity; in response Plaintiff told her that the dishwasher was back in its cavity, so that, in order to examine its cavity, Ms. Siu would probably need to bring help and some tools.

31.    On Monday, March 29, 2021, Ms. Siu visited the Insured Property, alone. At the outset of this visit, Ms. Siu asked Plaintiff to recount the history of the loss. Plaintiff told Ms. Siu the same information she had told other State Farm representatives from the

outset of the claim about her discovery of the sudden and accidental leak from the dishwasher and how the plumber addressed it. After the interview, Ms. Siu visually looked around the kitchen, took measurements of the kitchen, and took some photographs of the kitchen. During this visit Ms. Siu never attempted to pull out or examine the dishwasher. Thus, during this entire visit, the dishwasher was and remained installed in its normal position, including with its toe-kick in place, such that neither the underside of the dishwasher, nor the flooring below the dishwasher, nor any of the cabinetry abutting the dishwasher, nor the wall behind the dishwasher, was visible or accessible.

32.     Ms. Siu then proceeded to point to an area of the kitchen floor approximately 15-20 feet away from the dishwasher and expressed her subjective, unsupported opinion that she believed that flooring to be wet and/or water-damaged. The areas to which she was pointing actually appeared to be dry and without visible damage, and the only portion of the floor that was visibly warped from the dishwasher discharge was in the area adjacent to the dishwasher, nowhere near the area to which Ms. Siu now pointed. To the extent that Ms. Siu was trying to come up with some justification for coverage exclusion on the purported bases of "wear and tear" or "continuous or repeated" water leak and "deterioration," her statements at the time of the home visit and later in the denial letter were contrary to the actual conditions at the Insured Property and contrary to Plaintiff's statements and documentation. To the best of Plaintiff's knowledge, Ms. Siu did not take any moisture readings of the purportedly wet flooring area 15-20 feet away from the dishwasher. Nobody at State Farm ever documented any evidence of "wear and tear" or "continuous or repeated" water seepage causing "deterioration" to Plaintiff, even as State Farm purported to relied on the related Policy exclusions in denying Plaintiff's claims.

33.     Next, Ms. Siu informed Plaintiff that earlier that Monday morning (March 29, 2021), prior to Ms. Siu's visit to the Insured Property, Plaintiff's claim had been allegedly reviewed by State Farm "management" who had already allegedly determined that coverage had been extended in error and who had already allegedly decided, before Ms. Siu's visit to the Insured Property, that the claim would be denied. Ms. Siu stated that

1  it had been determined earlier that morning that the water discharge was a repeating slow

2  seepage type of discharge rather than a sudden and accidental discharge, and therefore the

3  resulting water damage would not be covered. Ms. Siu further falsely stated that in any

4  case, the claim was not eligible for coverage because State Farm does not provide coverage

5  for claims relating to water discharge from dishwashers. Shocked and dismayed by this

6  sudden about-face by State Farm, Plaintiff pointed out to Ms. Siu that it did not make sense

7  that water damage caused by water discharge from a dishwasher was not eligible for

8  coverage, because State Farm adjuster Cedric McCray had already earlier approved her

9  claim while being fully aware that the water damage had been caused by water discharge

10 from a dishwasher. To this, Ms. Siu responded that Cedric McCray was in error when he

11 approved the claim.

12      34.    On March 30, 2021, State Farm issued Plaintiff a claim denial letter. A true

13 and correct copy of the denial letter is attached hereto as **Exhibit D**.

14      35.    The denial letter, signed by Ms. Siu, states, in part, "Our inspection and

15 investigation found no signs of covered accidental direct physical loss. As we discussed,

16 the damages noted indicated repeated water leakage from the dishwasher failure." This

17 assertion misstates the discussions between Ms. Siu and Plaintiff and the facts of the claim.

18 The arguments that Ms. Siu was making to Plaintiff during the March 29, 2021 visit were

19 contrary to what was in front of both their eyes and not supported by evidence, and Plaintiff

20 informed Ms. Siu at the time that she did not agree with them. To the extent that State

21 Farm's denial of coverage relied on the alleged "discussions" referenced in the denial letter,

22 it was baseless.

23      36.    The denial letter proceeds to cite Policy exclusion provisions pertaining to

24 mold. However, Plaintiff was not making any claims relating to any mold. To the extent

25 that State Farm relied on the alleged mold exclusions in the Policy to deny Plaintiff

26 coverage, the denial is baseless.

27      37.    The denial letter cites the Policy provisions purporting to exclude from

28 coverage losses due to "wear, tear, marring, scratching, deterioration, inherent vice, latent

defect or mechanical breakdown; […]. corrosion, electrolysis or rust; [or] wet or dry rot," as well as "continuous or repeated seepage or leakage of water or steam" from an appliance or plumbing. The denial letter states, without referring to any evidence, that "The predominant cause of the loss is wear, tear, or latent defect of the dishwasher and or it's plumbing which resulted in continuous and repeated leakage of water resulting in mold and deteriorated damages." However, other than reviewing the single photograph that Plaintiff provided of the dishwasher cavity, State Farm never investigated the cause of the water discharge or the nature of the water damage, never documented evidence of related "mold or deteriorated damages" in Plaintiff's kitchen, and never provided any facts to support the application of the cited exclusions to the claim. Moreover, State Farm never even attempted an investigation of any purportedly related mold, or dry rot, or whatever it meant by "deteriorated damages." It simply denied the claim without factual basis for denial.

38.     The denial letter purports to advise Plaintiff that she has one year to initiate any lawsuit against State Farm, beginning from the date of the loss. Even that statement appears to be contrary to the actual provisions of the Policy. Pursuant to Amendatory Endorsement FE-1386, STATE OF EMERGENCY AMENDATORY ENDORSEMENT, which was in effect with the 2020-2021 Policy term, in the event of an emergency as defined by California Government Code section 8558, "The time period for filing suit is extended to 24 months after inception of the loss." State Farm was aware or should have been aware of the California-wide state of emergency due to COVID-19 proclaimed by Governor Newsom in March 2020 (and ongoing in 2021), as well as the various local emergency conditions in Santa Clara. Despite that, State Farm appears to have misrepresented to Plaintiff the terms of the Policy, ignoring Amendatory Endorsement FE-1386.

39.     Following the denial of her claim by State Farm, Plaintiff has now begun the work on abating the asbestos and lead and then repairing the kitchen to a usable state, all out of her own pocket.

40.     State Farm's conduct in handling and ultimately denying Plaintiff's claim

1  was injurious to Plaintiff, frustrated her reasonable expectations as an insured under the

2  Policy, and caused her emotional distress, pain and suffering, among other damages.

### FIRST CAUSE OF ACTION

#### Breach of Contract

#### Against State Farm and Does 1-50

6  41.    Plaintiff incorporates by this reference the allegations of paragraphs 1

7  through 40, above, as though the same are fully set forth herein.

8  42.    Commencing in or about January 2021 (and within the past one year),

9  Plaintiff has suffered damage arising from direct physical loss or damage to the Insured

10  Property arising out of a covered loss under the Policy.

11  43.    Plaintiff gave timely notice of the loss under the Policy and cooperated in the

12  adjustment of the claim at all times.

13  44.    Plaintiff has duly performed all conditions on her part under the Policy

14  except as excused by State Farm's conduct and breaches of contract.

15  45.    State Farm and Does 1-50, inclusive, have breached the Policy by improperly

16  denying coverage for the covered loss and refusing to pay Policy benefits in connection

17  with Plaintiff's claim. Said Defendants have further breached the Policy by failing to duly

18  investigate the claim and to otherwise afford Plaintiff a fair claim adjustment and handling

19  process, including by arbitrarily denying coverage relying on inaccurate assertions as to

20  facts and despite originally agreeing to extend coverage. State Farm had the same

21  information regarding the circumstances of Plaintiff's loss when it originally agreed to

22  extend coverage in early and mid-March 2021 as when it reversed itself and denied

23  coverage, in late March 2021.

24  46.    Defendants' conduct constitutes material breaches of the Policy.

25  47.    Defendants' conduct further constitutes a breach of the implied covenant of

26  good faith and fair dealing.

27  48.    Defendants' conduct also constitutes breaches of the laws, rules and

28  regulations governing the conduct of insurers in California, to the extent the same are

deemed to form a part of the insurance contract.

49.    As a direct, proximate and foreseeable result of Defendants' breaches, Plaintiff has suffered damages in the amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Tortious Breach of Contract / Insurance Bad Faith**

**Against State Farm and Does 1-50**

50.    Plaintiff incorporates by this reference the allegations of paragraphs 1 through 40 and 42 through 49, above, as though the same are fully set forth herein.

51.    The Policy contains an implied covenant of good faith and fair dealing requiring, inter alia, that Defendants act in good faith and deal fairly with Plaintiff and take no action to interfere with Plaintiff's rights to receive benefits which she reasonably expected to receive under the Policy. Defendants have tortiously breached that implied covenant of good faith and fair dealing, as hereinabove alleged, in that they, among other things:

    a.    Wrongfully, intentionally, unreasonably and in bad faith refused to honor their obligations under the Policy;

    b.    Wrongfully, intentionally, unreasonably and in bad faith failed and refused to evaluate Plaintiff's claim in an objective fashion and instead wrongfully, intentionally, and unreasonably denied coverage without conducting a thorough investigation;

    c.    Wrongfully, intentionally, and in bad faith engaged in an unreasonable and arbitrary interpretation of the Policy;

    d.    Wrongfully, intentionally, unreasonably and in bad faith failed and refused to fully and fairly pay a covered loss under the Policy;

    e.    Fraudulently misrepresented and falsely promised that they would indemnify and pay the losses incurred by Plaintiff under the Policy for covered loss when they had no intention of doing so. Among other

things, Defendants advertised the Policy issued to Plaintiff as one of the broadest homeowners' insurance policies available on the market, whereas in fact Defendants appear to be knowingly using intentionally ambiguous Policy terms, such as the ill-defined phrases "wear and tear," "deterioration," and "continuous or repeated," and unfairly interpreting them to deny coverage for Plaintiff's water damage losses. In addition, the State Farm promotional brochure provided by State Farm to Plaintiff states that there is coverage for "Sudden and accidental water discharge from plumbing or appliances" but makes no mention of an exclusion for continuous or repeated seepage or leakage which causes deterioration, etc. It does have a section discussing "Losses Not Insured," but that exclusion is not noted.

f.  Wrongfully, intentionally, unreasonably and in bad faith failed to conduct and diligently pursue a thorough, fair and reasonable investigation of the claim;

g.  Wrongfully, intentionally, unreasonably and in bad faith failed and refused to adjust the claim in compliance with, among others, Sections 2695.7 et seq. of the Fair Claims Settlement Practices Regulations and Section 790.03(h) of the California Insurance Code;

h.  Wrongfully, intentionally, unreasonably and in bad faith misled Plaintiff as to the applicable statutes or limitations;

i.  Wrongfully, intentionally, unreasonably and in bad faith forced Plaintiff to incur the expense of filing the within action to recover benefits owing under the Policy; and

j.  Wrongfully, intentionally, unreasonably and in bad faith placed their own interests above those of their insureds, including but not limited

to Plaintiff.

52.     Plaintiff is informed and believes, and based thereon alleges, that Defendants have engaged in similar bad faith conduct with respect to its other insureds in connection with water damage claims and otherwise as a matter of course.

53.     In order to recover the Policy benefits sought herein, and as a result of Defendants' bad faith and tortious breach of contract, Plaintiff has been and will be forced to incur attorneys' fees and related expenses and costs.

54.     Additionally, Plaintiff has endured pain and suffering as a direct result of the conduct of Defendants.

55.     As a direct, proximate and foreseeable result of the aforesaid intentional and wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

56.     Defendants engaged in the aforesaid conduct with a willful and conscious disregard of Plaintiffs' rights and hardships, so as to constitute oppression, fraud and malice under California Civil Code Section 3294. By reason of the foregoing, Plaintiff is entitled to recover damages from Defendants for the sake of example and to punish and deter Defendants in a sum to be determined by the trier of fact.

57.     Plaintiff is a "Disabled Person" as defined in California Civil Code section 1761(g) and seeks to treble any punitive damage awarded as provided in Civil Code section 3345.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PRAYS for judgment on her Complaint as follows:

1.  On the First Cause of Action, for compensatory damages according to proof;

2.  On the Second Cause of Action, for compensatory damages according to proof, punitive damages according to proof, treble punitive damages pursuant to Civil Code section 3345, consequential damages, damages for pain and suffering endured by Plaintiff, and reasonable attorney's fees and costs incurred in obtaining the benefits due under the Policy.

3.  For interest, including pre-judgment interest in accordance with law;

4.  For expenses and costs incurred herein; and

5.  For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 6, 2022                    BMCA LAW GROUP, a P.C.

BY: _____

BRUCE M. COHEN
Attorneys for Plaintiff
DEBRA COHEN TUDOR

EXHIBIT A

**State Farm General Insurance Company**
PO Box 853907
Richardson, TX 75085-3907

POLICY NUMBER     05-GJ-8083-9

**HOMEOWNERS AVAILABLE COVERAGE NOTICE**

**SEE RENEWAL CERTIFICATE**

AT2                    H-02- 0010-FAD9     H  W   F
        002265 0001
TUDOR, DEBRA
3433 WHEELING DR
SANTA CLARA CA   95051-6034

ST-167
0105-1301

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET. THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE. PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Building Ordinance or Law (for higher limits)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical employees)

Child Care Liability (for those providing child care in their home)

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Identity Restoration

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses' Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, or false arrest)
**\*\*Optional Coverages continued on the reverse side\*\***

**This notice contains only a general description of the coverages and is not a contract. All coverages are subject to the provisions in the policy itself.** Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.

### IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING

This policy does not cover damage to your property caused by flooding. You may be eligible for such coverage through the National Flood Insurance Program ("NFIP"), if you live in a participating community. For more information, contact your State Farm® agent or visit floodsmart.gov.

6789          201B     I
2N.DR.NP.I2.PD                    **Agent** JONATHAN BARRON
109                              **Telephone** (408) 564-8880          REB          Prepared  FEB 03 2020

o1f008J   07.02.2008

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY.
THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.


Silverware/Goldware (for broadened coverage and higher limits)

Increased Personal Property (for higher limits above the standard policy limit, which is a percentage
of your Coverage A-Dwelling amount)



**State Farm General Insurance Company**
PO Box 853907
Richardson, TX 75085-3907

H-02- 0010-FAD9    H W   F
002265  0001

TUDOR, DEBRA
3433 WHEELING DR
SANTA CLARA CA   95051-6034



ST-167
0205-1301

Location:  Same as Mailing Address

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955.CA |
| Increase Dwlg up to $131,040 | OPT   ID |
| Ordinance/Law  25%/ $163,800 | OPT   OL |
| Jewelry and Furs $1,500/$2,500 | OPT   JF |
| Homeowners Policy Endorsement | FE-3422 |
| Amendatory Endorsement | FE-3247 |
| Back-Up Dwell/Listed Property | FE-3560 |
| State of Emergency Amendatory | *  FE-1386 |

*Effective: MAR 30 2020

**RENEWAL CERTIFICATE**
POLICY NUMBER        05-SL-6069-6

Homeowners Policy
MAR 30 2020  to  MAR 30 2021

| DATE DUE | SEE BALANCE DUE NOTICE |
|---|---|
| MAR 30 2020 | $1,231.00 |

**Coverages and Limits**

**Section I**

| | | |
|---|---|---|
| A  Dwelling | | $655,200 |
| Dwelling Extension | Up To | 65,520 |
| B  Personal Property | | 491,400 |
| C  Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | |
|---|---|
| All Losses  1/2% | 3,276 |

**Section II**

| | |
|---|---|
| L  Personal Liability | $1,000,000 |
| Damage to Property of Others | 500 |
| M  Medical Payments to Others (Each Person) | 5,000 |

| | |
|---|---|
| **Annual Premium** | $1,231.00 |
| **Amount Due** | $1,231.00 |

**Premium Reductions**

| | |
|---|---|
| Home Alert Discount | 110.00 |
| Claim Record Discount | 326.00 |

Inflation Coverage Index:   327.5

NOTICE:  Information concerning changes in your policy language is included.  Please call your agent if you have any questions.

This policy includes Building Code Upgrade Coverage of  $163,800.

Please help us update the data used to determine your premium.  Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

138-3076 f.8  10-11-2010  (o130d9c)

*Thanks for letting us serve you.  We appreciate our long term customers.*
**Agent** JONATHAN BARRON
**Telephone** (408) 564-8880

6790        201B
E *  2N.DR.NP.J2.PD
015

*Moving? See your State Farm agent.*
*See reverse for important information.*
Prepared

FEB 03 2020

REB

**Your Coverage Amount....**

The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home. It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from a third-party vendor using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm*does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

**State Farm**

POLICY NUMBER    05-34-5089-5

### NOTICE TO CONSUMERS - CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

**You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

☐ **ACTUAL CASH VALUE COVERAGE** pays the costs to repair the damaged dwelling minus a deduction for physical depreciation. If the dwelling is completely destroyed, this coverage pays the fair market value of the dwelling at time of loss. In either case, coverage only pays for costs up to the limits specified in your policy.

☐ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

☒ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

☐ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page.

☒ **BUILDING CODE UPGRADE COVERAGE,** also called Ordinance and Law coverage, is an important option that covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:** The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

ST-167
0305-1901

550-696 a.3  10-21-2014  (o150088)

201B
108   6791

**CONTINUED ON REVERSE SIDE**    Prepared    FEB 03 2020

## INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

**THE RESIDENTIAL DWELLING COVERAGE LIMIT:** The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

The cost to rebuild your home is almost always different from the market value.

Dwelling coverage limits do not cover the value of your land.

The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lighting and plumbing.

The cost to rebuild your home should be adjusted each year to account for inflation.

Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

**CHANGES TO PROPERTY:** Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

**EXCLUSIONS:** Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

## CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE:

This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

## CONSUMER ASSISTANCE

If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encouraged to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

**State Farm**

6792  **05-GL-6089-6**

FE-1386C
Page 1 of 2

# IMPORTANT NOTICE



ST-167
0405-1301

Effective with this policy term, **FE-1386 STATE OF EMERGENCY AMENDATORY ENDORSEMENT (California)** is added to your policy.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

- Language has been revised to address covered losses relating to a state of emergency as defined in Section 8558 of the California Government Code. In the event of a qualified state of emergency loss, the following revisions apply:

  - **COVERAGE C – LOSS OF USE, Additional Living Expense** – A coverage extension may be granted up to 12 additional months, for a total of 36 months, if there are delays in the reconstruction process that are the result of circumstances beyond the insured's control as defined by Cal. Ins. Code § 2051.5.

  - **SECTION I – LOSS SETTLEMENT, COVERAGE B – PERSONAL PROPERTY, B1 – Limited Replacement Cost Loss Settlement** – Under item 1.a.(3), the time period for receiving payment on a replacement cost basis is extended. Repair or replacement of the covered property must be completed within 36 months from the date of the first payment toward the actual cash value of the property in order to receive any additional payments on a replacement cost basis.

  - **SECTION I – CONDITIONS, Suit Against Us** – The time period for filing suit is extended to 24 months after inception of the loss.

  **\*\*\* NOTICE: These revisions apply only in the event of a qualified state of emergency loss. \*\*\***

Endorsement **FE-1386** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## STATE OF EMERGENCY AMENDATORY ENDORSEMENT (California)

### COVERAGE C – LOSS OF USE

The following is added to **Additional Living Expense**:

In the event a Loss Insured arising from a state of emergency, as defined in Section 8558 of the Government Code, causes the **residence premises** to become uninhabitable, we may grant an extension of up to 12 additional months, for a total of 36 months, if you, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process that are the result of circumstances beyond your control. Circumstances beyond your control include, but are not limited to:

a. unavoidable construction permit delays;

b. lack of necessary construction materials; and

c. lack of available contractors to perform the necessary work.

### SECTION I – LOSS SETTLEMENT

### COVERAGE B – PERSONAL PROPERTY

Under **B1 – Limited Replacement Cost Loss Settlement**, item 1.a.(3) is replaced by the following:

(3) To receive any additional payments on a replacement cost basis, you must complete the repair or replacement:

(a) within 24 months from the date that we make the first payment toward the actual cash value of the property, or

(b) within 36 months from the date that we make the first payment toward the actual cash value of the property, if the loss relates to a state of emergency as defined in Section 8558 of the Government Code.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

## SECTION I – CONDITIONS

The following is added to **Suit Against Us**:

If the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code,

FE-1386

the time limit to bring suit is extended to 24 months after inception of the loss.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

*StateFarm*

553-2948



ST-167
0505-1301

# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Certificate are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Certificate are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Certificate will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-2948 (C)          (10/08)

553-2798

# IMPORTANT NOTICE . . . Discounts and Rating

The longer you are insured with State Farm® and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan. Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

553-2798 (C)          (10/07)

553-3158 CA

## Important Reminder . . .

Under the Utility Rating Plan, premiums may increase when any of the utility systems (electrical, plumbing, heating, and cooling) in your dwelling insured by this policy become 40 years old. Your premiums may be reduced if you have:

(1) Completely replaced all utility systems (electrical, plumbing, heating, and cooling) in the last 40 years; or

(2) Replaced the heating equipment, air conditioning equipment, electrical service entrance and distribution panel in the last 16 years.

Please ask your State Farm® agent for details.

553-3158 CA (C)     (11/09)

FP-7955 C.
(6/96

  

FP-7955 CA
(6/96)



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

DECLARATIONS CONTINUED . . . . . . . . . . . . . . . . . . 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SECTION I - YOUR PROPERTY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . 3
    Coverage B - Personal Property . . . . . . . . . . . . 3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . 7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . 9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . 12
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 14

SECTION II - YOUR LIABILITY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Coverage L - Personal Liability . . . . . . . . . . . . 16
    Coverage M - Medical Payments to Others . . . . . 16
    Additional Coverages . . . . . . . . . . . . . . . . . . 16
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . 17
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 19

SECTION I AND SECTION II - CONDITIONS . . . . . . . . 20

WORKERS' COMPENSATION . . . . . . . . . . . . . . . . . 22

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . 24

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-7955 CA
(6/96)

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured.**

   We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises.**

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

FP-7955 CA

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or

motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value**. When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use**. When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal**. We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs**. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or

loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants**. We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed**. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money**.

   a. We will pay up to $1,000 for:

   (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure

is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 360-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

6

FP-7955 CA

The collapse must be directly and immediately caused only by one or more of the following:

    a.  perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

    b.  hidden decay of a supporting or weight-bearing structural member of the building;

    c.  hidden insect or vermin damage to a structural member of the building;

    d.  weight of contents, equipment, animals or people;

    e.  weight of ice, snow, sleet or rain which collects on a roof; or

    f.  use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

  1. **Fire or lightning**.

---

This coverage does not increase the limit applying to the damaged property.

12. **Locks**. We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

### INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

  1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

  2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

  2. **Windstorm or hail**. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

  3. **Explosion**.

4. **Riot or civil commotion**.

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

(1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

(c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable **instruments**, **accounts**, **deeds**, evidences of debt, letters of credit, notes

other than bank notes; manuscripts, passports, tickets and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried by a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which

enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a.  caused by or resulting from freezing; or

b.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a.  maintain heat in the building; or

b.  shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1.  We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.

2.  We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

b.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed.

This exclusion does not apply if you have used reasonable care to:

(1)  maintain heat in the building; or

(2)  shut off the water supply and drain the system and appliances of water;

c.  freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

d.  theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

e.  vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which the water or steam escaped; We do not cover loss to the system or appliance from which the water or steam escaped;

g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

h. corrosion, electrolysis or rust;

i. mold, fungus or wet or dry rot;

j. contamination;

k. smog, smoke from agricultural smudging or industrial operations;

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

3. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Earthquake.**

However, we do insure for any direct loss by fire resulting from earthquake, provided the resulting fire loss is itself a Loss Insured.

b. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

FP-7955 CA

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any conse-

quence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do not insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

FP-7955 CA

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

### 1. A1 - Replacement Cost Loss Settlement - Similar Construction.

a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

    (1)  until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

    (2)  when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

    (3)  to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (4)  we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b.  Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Decla-

rations for COVERAGE A - DWELLING EXTENSION.

### 2. A2 - Replacement Cost Loss Settlement - Common Construction.

a.  We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

    (1)  we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

    (2)  until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

    (3)  when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

    (4)  to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (5)  we will not pay for increased costs resulting from enforcement of any ordinance or law regulating

FP-7955 CA

the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b.  Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1.  B1 - Limited Replacement Cost Loss Settlement.

a.  We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b.  We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value, including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2.  B2 - Depreciated Loss Settlement.

a.  We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b.  We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value, including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence prem-**

**ises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option**. We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property**. We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause**. The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays on demand any premium due under this policy, if you have not paid the premium; and

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

   d. If we pay the mortgagee for any loss and deny payment to you:

      (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee**. We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

FP-7955 CA

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured;**

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured;**

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured;** or

   d. is caused by an animal owned by or in the care of an **insured;** or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured.**

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of others caused by an **insured.**

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

FP-7955 CA

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obli-

gated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and **insured**;

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

FP-7955 CA

    (4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M**. The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give us written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow us to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M**. Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured**. Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period**. This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud**. This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause**. If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions**. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation**.

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice. Upon receipt of written request from you, we shall furnish the facts on which the cancellation is based:

    (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is

FP-7955 CA

payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel if there has been:

(a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;

(b) discovery of fraud or material misrepresentation;

(c) discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

(d) physical changes in the property insured which result in the property becoming uninsurable.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 45 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return

premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**10. Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

# WORKERS' COMPENSATION
## (Residence Employees)

## COVERAGES

We will pay, with respect to **residence employees:**

1. under Coverage I, when due, all benefits required of an **insured** by the California Workers' Compensation Law; and

2. under Coverage II, on behalf of an **insured**, all damages for which the **insured** is legally liable because of **bodily injury** sustained by a **residence employee**. The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by the **insured** while:

   a. in the United States of America, its territories or possessions, or Canada; or

   b. temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

   Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

These coverages apply only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the **residence employee's** employment by the **insured**.

## SPECIAL DEFINITION

**Residence employee**, as used in this coverage, means an employee of any **insured** whose duties are incidental to the ownership, maintenance or use of the **residence premises**, including the performance of household domestic services, or whose duties are personal and not in the course of the trade, **business**, profession or occupation of any **insured**.

**Residence employee** does not include any person of whom the **insured** is the parent, spouse or child. Also, **residence employee** does not include any person who, during the 90 calendar days immediately preceding injury:

1. was employed by the **insured** for less than 52 hours; or

2. earned less than $100 in wages from an **insured**.

## EXCLUSIONS

This coverage does not apply:

1. to liability for additional compensation imposed on an **insured** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of:

   a. the serious and willful misconduct of an **insured**; or

   b. **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

2. to liability for **bodily injury** arising out of **business** pursuits of an **insured**;

3. to liability arising out of the discharge, harassment or coercion of, or the discrimination against any employee in violation of any law;

4. under Coverage II:

   a. to liability assumed by the **insured** under any contract or agreement;

   b. to **bodily injury** by disease unless a written claim is made or suit brought against the **insured** within 36 months after the end of the policy period;

   c. to any obligation under a workers' compensation, unemployment or disability benefits law or any similar law;

FP-7955 CA

d. to punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy;

e. to **bodily injury** intentionally caused or aggravated by you.

## LIMIT OF LIABILITY COVERAGE II

Our total limit of liability will not exceed $100,000 for all damages because of **bodily injury**:

1. sustained by one or more **residence employees** in any one accident; or

2. caused by disease and sustained by a **residence employee**.

Our total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

## APPLICABLE POLICY PROVISIONS

The following policy provisions apply to this coverage:

1. the definitions of "you", "your", "we", "us", "our", "**bodily injury**", "**business**", "**insured**" and "**residence premises**";

2. our agreement to defend the **insured** as provided under Coverage L - Personal Liability;

3. **Section II - Additional Coverages**, items:

1. Claim Expenses; and

2. First Aid Expenses;

4. **Section II - Conditions**, items:

3. Duties After Loss; and

6. Suit Against Us;

5. **Section I and Section II - Conditions**, items:

4. Waiver or Change of Policy Provisions;

5. Cancellation;

7. Assignment; and

8. Subrogation.

## ADDITIONAL POLICY PROVISIONS

The following additional provisions apply:

1. under Coverage I:

a. we will be directly and primarily liable to any **residence employee** of an **insured** entitled to the benefits of the California Workers' Compensation Law;

b. as between the **residence employee** and us, notice to or knowledge of the occurrence of the injury on the part of an **insured** will be deemed notice or knowledge on our part;

c. the jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be our jurisdiction;

d. we will be subject to the orders, findings, decisions or awards rendered against an **insured**, under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an **insured** and us as to payments by either in discharge of an **insured's** liability for compensation;

e. the **residence employee** has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the **residence employee**, we will pay it directly to the **residence employee**. Your obligation to the **residence employee** will be discharged to the extent of such payment; and

f. the law mandates that you reimburse us for penalties we are required to pay the injured employee. We are required to pay a 10% penalty of the late payment if the late payment which gives rise to an increased payment is due less than 7 days after we receive the completed claim form from the employer.

We will notify you in writing, within 30 days of the payment and will bill and collect the amount of the penalty. You are not obligated to repay us unless the aggregate total paid in a policy year exceeds $100.

FP-7955 CA

You will have 60 days, following notice of the obligation to reimburse, to appeal the decision to the Department of Insurance.

2. under Coverage I and Coverage II:

a. **Other Insurance.** This coverage does not apply to any loss to which other valid and collectible Workers'

Compensation or Employers' Liability Insurance applies.

b. **Conformity to Statute.** Terms of this coverage which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, **Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits.** SECTION II - EXCLUSIONS, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit**. We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension**.

**Report Increased Values**. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

25

FP-7955 CA

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

   (a) on an occasional basis for exclusive use as a residence;

   (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

   (c) in part, as an incidental **business** or private garage;

   (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

   (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

   (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

   (a) any **insured**;

   (b) any employee of any **insured**; or

   (c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL - Building Ordinance or Law.**

**1. Coverage Provided.**

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

**2. Damaged Portions of Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

**3. Undamaged Portions of Damaged Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

    a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

    b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same Loss Insured;

        (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations**.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Laura P. Sullivan*
         Secretary

*Gregg W Jones*
         President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955 CA

IMPORTANT NOTICE

Effective with this renewal, HOMEOWNERS POLICY ENDORSEMENT (California) FE-3422, replaces endorsements FE-5320, FE-5363, FE-5383, FE-5424, FE-5427, FE-5452, FE-5480, FE-5801, FE-5831, FE-5400 and changes your Homeowners booklet, FP-7955 CA.

Some of these changes reduce, eliminate or broaden coverage. Other changes, although not intended to change coverage, could potentially reduce or eliminate coverage depending on how they are interpreted. In that regard, they should be viewed as either an actual or a potential reduction in coverage.

This Notice provides a brief description of some of the changes. We encourage you to read your new endorsement and note the following changes:

*(continued inside)*

8/11        553-3462 CA

---

*This message is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.*

State Farm General Insurance Company
Bloomington, IL

8/11        553-3462 CA

---

## OTHER CHANGES

- Under Coverage B – Personal Property, Special Limits of Liability, gift certificates, gift cards, rechargeable debit cards, and phone cards are specifically listed along with securities, checks, and other negotiable instruments as being subject to a special coverage limit of $1,000.

- Language is added to Section I – Conditions, Appraisal to state:

  • The appraiser will select a competent and disinterested umpire.

  • Appraisal proceedings are informal unless you and we mutually agree otherwise. Informal means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

  • The appraisers will appraise the loss and separately state the actual cash value and loss to each item. If they fail to agree, they will submit their differences, only, to the umpire.

  • In the event of a government-declared disaster, appraisal may be requested by either you or us but shall not be compelled.

- Language is added to Section I and Section II Conditions, Premium that describes when the premium is due, the rates the premium is based upon, and the effect this policy may have on other coverages obtainable from, or other premiums paid to, the State Farm Companies.

- A Right to Inspect condition is added to Section I and Section II Conditions and states we may make inspections and surveys of your property concerning its insurability and the premiums to be charged.

- A Joint and Individual Interests condition is added to Section I and Section II Conditions and states when there are two or more named insureds, each acts for all to cancel or change the policy.

- A Change of Policy Address conditions is added to Section I and Section II Conditions and states we may change the named insured's address in the Declarations and our records to the most recent address provided to us, by you or the United States Postal Service.

- In the OPTIONAL POLICY PROVISIONS (if shown in the Declarations):

  • Option BP – Business Property – The coverage limit purchased with this optional provision now replaces the $1,500 limit in the policy rather than the previous $1,000 limit.

  • Option HC – Home Computer – The coverage limit purchased now applies to mobile personal communication equipment, global positioning systems, and mobile personal electronic devices in addition to electronic data processing system equipment.

Please read endorsement FE-3422 carefully and keep it with your policy. If you have any questions, please contact your State Farm agent.

8/11        553-3462 CA

- Contraband, or any property used in the course of illegal consumption, possession, import, export or trade.

- Section I – Additional Coverage, Collapse, is revised to state coverage for collapse of a building caused by decay, deterioration, insect damage or vermin damage that is hidden from view is excluded if the hidden damage is known to an insured prior to the collapse.

- Language is added to Section I – Losses Not Insured to state there is no coverage for loss caused by flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not. There is also no coverage for material carried or otherwise moved by any water described in the water exclusion.

- Section II – Additional Coverages, Claim Expenses, is changed to state we will pay prejudgment interest, when owed by law, but only on the lesser of that part of the damages we pay or the policy's Coverage L limit.

- Language is added to Option OL – Building Ordinance or Law to state we will not pay for legally required changes to specific dwelling features, systems or components that have not been physically damaged by the Loss Insured.

## BROADENED COVERAGE

- Liability coverage is extended to include commercially manufactured 2, 3 or 4 wheeled personal conveyances powered by an unmodified motor of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

- The Special Limits of Liability under Coverage B – Personal Property, has changed as indicated below:

  - The limit for property used or intended to be used for business has increased to $1,500. The limit for such property away from the residence premises has increased to $750.

  - The limit on watercraft, outboard motors, including their trailers, furnishings and equipment has increased to $1,500.

  - The limit on trailers not used with watercraft has increased to $1,500.

  - Limited property coverage up to $500 is added for certain low powered commercially manufactured personal conveyances.

- Language in Section I – Additional Coverages, Trees, Shrubs and Landscaping is added to cover live or artificial plants, artificial grass and hardscape property used for aesthetic purposes not permanently affixed to the realty. The coverage limit for any one outdoor tree, shrub, plant or hardscape item has increased to $750.

- The coverage limit under Section I – Losses Insured, Coverage B – Personal Property, Sudden and accidental damage to electrical appliances, devices, fixtures and wiring has increased to up to $1,500 for each damaged item.

- Section II – Additional Coverages, Claim Expenses, is revised to state the most we will pay for all reasonable expenses incurred by the insured at our request, including loss of earnings, is $200 per day.

(continued on back)

## REDUCTIONS IN COVERAGE OR LIMITS

- The Special Limits of Liability under Coverage B – Personal Property, has changed so the $5,000 limit on electronic data processing equipment now applies to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for reproduction of sound and standard media or non-media equipment used with any of these devices.

- There is no coverage under Coverage B – Personal Property, Property Not Covered for:

  - Videos or other media that may be used with equipment permanently attached to motor vehicles or other motorized land conveyances.

  - Data, sound or video that cannot be replaced with like kind and quality on the retail market that is transferred onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound.

  - Outdoor hardscape property used for aesthetic purposes, except as provided in Section I – Additional Coverages, item 3.

- Language is added to Coverage C – Loss of Use, Prohibited Use, to state when physical damage by a covered cause of loss occurs to property other than covered property located on the residence premises, we will pay the Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks. Coverage applies when access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises is within the area, but not more than one mile from where the damaged property is located.

- Language is added to Section II – Additional Coverages, Claim Expense to state that when we provide a defense against a suit, we will pay the costs taxed against you; however, such costs do not include attorney fees.

- Language is added to Section II – Conditions, Limit of Liability to state the coverage limit shown in the Declarations applies to the policy period during which the injury or damage first occurs and no additional coverage or limits will be available for the occurrence under any additional policy periods this policy remains in force.

## POTENTIAL REDUCTIONS IN COVERAGE

- Language is added to the definition of "occurrence" to state that an accident must first result in bodily injury or property damage during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

- Lawns and artificial grass have been added to Coverage A, Property Not Covered, item 3. However, limited coverage is available under Section I – Additional Coverages, item 3.

- There is no coverage under Coverage B – Personal Property, Property Not Covered for:

  - Books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records.

FE-3422
Page 1 of 9

 **FE-3422 HOMEOWNERS POLICY ENDORSEMENT (California)**



ST1-
0409-410801

When used in the provisions of this policy or any endorsement attached to this policy, the word "spouse" is replaced with "spouse or registered domestic partner under California law".

## DEFINITIONS

Definitions 6. and 7. are replaced by the following:

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

   The following are not **motor vehicles**:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an **insured location**;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

Definitions 11. and 12. are added:

11. "**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

12. "**State Farm Companies**" means one or more of the following:

    a. State Farm Mutual Automobile Insurance Company;

    b. State Farm Fire and Casualty Company; and

    c. subsidiaries or affiliates of either a. or b. above.

## SECTION I – COVERAGES

### COVERAGE A – DWELLING

Item 2., **Dwelling Extension**, is replaced by the following:

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

CONTINUED

(1) duties of the **insured's** employment by another; and

(2) performed solely by the **insured**; or

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

The following item is added to item 3. **Property Not Covered**:

d. lawns or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**.

## COVERAGE B – PERSONAL PROPERTY

**Special Limits of Liability** is replaced by the following:

**Special Limits of Liability**. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,500 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

k. $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., **Property Not Covered**, is replaced by the following:

2. **Property Not Covered**. We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED





FE-3422
Page 3 of 9

ST1-
0509-810601

recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l.  purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m.  contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n.  outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**.

**COVERAGE C – LOSS OF USE**

Item 3., **Prohibited Use**, is replaced by the following:

3.  **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

a.  direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

b.  the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c.  the action of the civil authority is taken in response to:

(1)  dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

(2)  dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

(3)  the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We do not cover loss or expense due to cancellation of a lease or agreement.

The following new section is added under **SECTION I – COVERAGES**:

**SECTION I – PROPERTY SUBJECT TO LIMITATIONS**

1.  We will not pay more than a total of $5,000 for all loss by **fungus** to:

a.  **COVERAGE B – PERSONAL PROPERTY** caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**; and

b.  **COVERAGE A – DWELLING** property caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY** or a loss not otherwise excluded under **SECTION I – LOSSES NOT INSURED**.

Regardless of the number of structures or other property items insured, this single $5,000 limit of insurance is the most we will pay for loss in any one occurrence for all Section I coverages and OPTIONAL POLICY PROVISIONS combined.

2.  This limitation applies to loss to all insured property, including all costs or expenses for:

a.  any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

b.  any remediation of **fungus**, including the cost or expense to:

(1)  remove or clean the **fungus** from covered property or to repair, restore or replace that property;

(2)  tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

(3)  contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(4)  remove any property to protect it from the presence of or exposure to **fungus**;

c.  the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

**SECTION I – ADDITIONAL COVERAGES**

Items 1., 3. and 11. are replaced by the following:

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. **Trees, Shrubs and Landscaping.**

   b. We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises**, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a Loss Insured to Coverage A property; or

      (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

         (a) the driveway, on the **residence premises,** and prevents land motor vehicle access to or from the dwelling; or

         (b) a ramp designed to assist the handicapped, on the **residence premises** and prevents access to or from the dwelling.

3. **Trees, Shrubs and Landscaping.** We cover outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A – DWELLING. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. decay, deterioration, insect damage or vermin damage, that are hidden from view, of a:

   (1) connector; or

   (2) structural member of a building;

   unless the presence of such damage is known to an **insured** prior to collapse;

c. weight of contents, equipment, animals or people;

d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d. and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

Item 9.b.(3)(c), is replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

Item 12.d. is deleted.

Item 15. is replaced by the following:

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.



## SECTION I – LOSSES NOT INSURED

Item 2.f. is deleted.

Item 2.i. is replaced by the following:

    2.   i.    wet or dry rot;

Item 4.c. is replaced by the following:

    4.   c.   **Water**, meaning:

        (1)  flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

        (2)  water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

        (3)  water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

        (4)  material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above; or

        (5)  continuous or repeated seepage or leakage of water or steam from a:

           (a)  heating, air conditioning or automatic fire protective sprinkler system;

           (b)  household appliance; or

           (c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

The following is added to item 4.:

    f.   **Fungus**, including:

        (1)  any loss of use or delay in rebuilding, repairing or replacing covered property, including any

associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

        (2)  any remediation of **fungus**, including the cost or expense to:

           (a)  remove or clean the **fungus** from covered property or to repair, restore or replace that property;

           (b)  tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

           (c)  contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

           (d)  remove any property to protect it from presence of or exposure to **fungus**;

        (3)  the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

However, we will pay for loss as specified under **SECTION I – PROPERTY SUBJECT TO LIMITATIONS**.

## SECTION I –LOSS SETTLEMENT

### COVERAGE A – DWELLING

Items 1. and 2. are replaced by the following:

1.  **A1 – Replacement Cost Loss Settlement – Similar Construction**

We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**.

We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

2.  **A2 – Replacement Cost Loss Settlement – Common Construction**

We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, subject to the following:

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

a. we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

b. we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

## SECTION I – CONDITIONS

Item 4. is replaced by the following:

4. **Appraisal**. In case you and we shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on your or our request, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located.

Appraisal proceedings are informal unless you and we mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with us shall determine the amount of actual cash value and loss.

Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.

In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either you or us but shall not be compelled.

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend. Taxed costs do not include attorney fees;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

   d. interest the **insured** is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages we pay; or

      (2) the Coverage L limit; and

## SECTION II – EXCLUSIONS

The following is added to item 1.:

   k. any:

      (1) **bodily injury** or **property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

      (2) loss, cost or expense arising out of any:

         (a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus**; or

         (b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus**.

## SECTION II – CONDITIONS

Item 1., **Limit of Liability**, is replaced by the following:

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED



The following condition is added to item 4., **Duties of an Injured Person – Coverage M**:

   d.   the injured person, or, when appropriate, someone acting on behalf of that person, shall:

   (1)   provide us with any required authorizations; and

   (2)   submit to us all information we need to comply with state or federal law.

### SECTION I AND SECTION II – CONDITIONS

The following conditions are added:

   11.   **Premium.**

   a.   Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

   b.   The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

   c.   The premium for this policy may vary based upon:

   (1)   the purchase of other products or services from the **State Farm Companies**;

   (2)   the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

   (3)   an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

   d.   Your purchase of this policy may allow:

   (1)   you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   (2)   the premium or price for other products or services purchased by you, including non-insurance products or services, to vary.

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

   12.   **Right to Inspect.** We have the right but are not obligated to perform the following:

   a.   make inspections and surveys of the **insured location** at any time;

   b.   provide you with reports on conditions we find; or

   c.   recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

   a.   make safety inspections;

   b.   undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

   c.   warrant that conditions are safe or healthful; or

   d.   warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

   13.   **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

   14.   **Change of Policy Address.** We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

   a.   you; or

   b.   the United States Postal Service.

### OPTIONAL POLICY PROVISIONS

**Option BP – Business Property** is replaced by the following:

   **Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option HC – Home Computer** is replaced by the following:

**Option HC – Home Computer**. The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., is increased to be the amount shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit** is replaced by the following:

**Option ID – Increased Dwelling Limit**. We will settle losses to damaged building structures covered under **COVERAGE A – DWELLING** according to the **SECTION I – LOSS SETTLEMENT** provision shown in the **Declarations**.

If the reasonable and necessary cost to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A – DWELLING, Dwelling Extension**.

**Report Increased Values**. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Optional Building Ordinance Law** is replaced by the following:

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the requirement is in effect at the time the Loss Insured occurs; and

      (3) the legally required changes are made to the undamaged portions of specific dwelling features, systems or components that have been physically damaged by the Loss Insured.

   We will not pay for legally required changes to specific dwelling features, systems or components that have not been physically damaged by the Loss Insured.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

31

4. **Building Ordinance or Law Coverage Limitations.**

We will not pay more under this coverage than:

a.  the reasonable and necessary increased cost to repair or rebuild the dwelling at the same premises, or if relocation is required by ordinance or law, at another premises in the same general vicinity; and

b.  the reasonable and necessary cost to demolish and clear the site of the undamaged

portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

All other policy provisions apply.

FE-3422

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



March 15, 2021

Debra Tudor                                    **State Farm Claims**
3433 Wheeling Dr                               P O Box 106169
Santa Clara CA 95051-6034                      Atlanta GA 30348-6169

RE:   Claim Number:    05-17H1-99F
      Date of Loss:    January 20, 2021

Dear Debra Tudor:

Our investigation and evaluation of your loss has determined that a portion of your damage is
not covered by your policy. As we discussed, the cost associated with repairing the failure of
your dishwasher is not covered under your policy. However, the resulting water damage is
covered. The predominant cause of the dishwasher failure is wear, tear, and/or deterioration.
Your policy FP-7955 CA specifically excludes coverage for wear, tear, deterioration, latent
defect and corrosion and states in part:

### SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A,
except as provided in **SECTION I - LOSSES NOT INSURED**.

### SECTION I - LOSSES NOT INSURED

1. We do not insure under any coverage for any loss consisting of the items in
   paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused
   by a peril which is not otherwise excluded.

2. We do not insure for any loss to the property described in Coverage A which is
   caused by one or more of the items below, regardless of whether the loss occurs
   suddenly or gradually, involves isolated or widespread damage, arises from natural or
   external forces, or occurs as a result of any combination of these:

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or
      mechanical breakdown;

05-17H1-99F
Page 2
March 15, 2021

      h. corrosion, electrolysis or rust;

      However, we do insure for any resulting loss from items a. through m. unless the
      resulting loss is itself a Loss Not Insured by this Section.

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if
you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may
have the matter reviewed by the California Department of Insurance, Claims Service Bureau,
300 South Spring Street, Los Angeles, California 90013, telephone 1-800-927-4357.

Pursuant to California Insurance Code, section 791.28, we are required to inform you that this
insurer reports claim information to one or more claim information databases. The claim
information is used to furnish loss history reports to insurers. If you are interested in obtaining a
report from a claim information database, you may do so by contacting:

      Consumer Inquiry Center
      Verisk Analytics
      545 Washington Boulevard, 18th Floor
      Jersey City, NJ 07310
      Telephone Number: 1-800-709-8842
      https://www.verisk.com/insurance/products/order-an-a-plus-loss-history-report

      LexisNexis Consumer Center
      P.O. Box 105108
      Atlanta, GA 30348
      Telephone Number: 1-800-456-6004
      www.consumerdisclosure.com

The California Fair Claims Practices Regulations state that you must be notified of all time limits
that may apply to your claim. Your policy contains the following provision concerning suits
against State Farm®:

      6. **Suit Against Us**. No action shall be brought against us unless there has been
      compliance with the policy provisions. The action must be started within one year
      after the date of loss or damage.

The one year period referred to does not include the time we take to investigate your claim. The
time from the date of loss 01/20/2021 to the date you reported your claim to your agent does
count in computing the amount of time that has already expired. The one year suit limitation
period is again running as of the date of this letter.

This company does not intend by this letter to waive any policy defenses in addition to those
stated above and reserves its right to assert such additional policy defenses at any time.

If you have questions or need assistance, call us at (480) 293-7844.

05-17H1-99F
Page 3
March 15, 2021

Sincerely,

Cedric McCray
Claim Specialist
(480) 293-7844
Fax: (844) 236-3646

State Farm General Insurance Company

EXHIBIT C

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



March 15, 2021

Debra Tudor                                    **State Farm Claims**
3433 Wheeling Dr                               P O Box 106169
Santa Clara CA  95051-6034                     Atlanta GA 30348-6169

RE:    Claim Number:        05-17H1-99F
       Date of Incident:    January 20, 2021
       Policy Number:       05GL60896

Dear Debra Tudor:

We are writing to confirm your participation in the State Farm Premier Service® Program. The purpose of this letter is to confirm some of the key points of our recent conversation regarding this voluntary program.

Under the State Farm Premier Service Program you have the opportunity to choose the independent network service provider who will assign a participating independent contractor to repair your property. In order to participate, State Farm® required independent network service providers to enter into a contract concerning the services to be provided. You have selected the following independent network service provider(s) to assign one of their participating independent contractor(s) to perform repairs as indicated in their estimate(s). Should you need to contact them regarding questions or concerns with their repairs, you can reach them at the following number(s):

        Servicemaster
        800-737-7663

Independent network or independent service providers are not authorized to answer questions or give opinions on whether damage is covered under your policy. Please direct those types of questions to us.

State Farm is not exercising its option under the insurance policy to repair or replace damaged property. Instead, State Farm will pay to repair the damaged building property covered by your policy, less your deductible, subject to your policy's terms and conditions. Any additional work performed at your request by your independent contractor or independent service provider(s) for repairs or improvements not covered under your insurance policy will be your responsibility. You will also be responsible for any additional cost of upgraded materials used to complete covered repairs.

As we discussed earlier, your assigned independent contractor(s) and/or each independent service provider(s) you select will ask you to sign an Authorization To Repair form to begin the

05-17H1-99F
Page 2
March 15, 2021

repair work. You will also receive an estimate for the repairs from each assigned independent service provider and the general contractor. Once repairs have been completed to your satisfaction, each independent service provider and/or your independent contractor will also ask you to sign an Authorization To Pay form, which will allow State Farm to pay them directly for the work they performed. The independent service provider(s) and your independent contractor(s) will warranty their workmanship labor on building or structure repairs for a five-year period.

We look forward to the opportunity to assist you.

If you have questions or need assistance, call us at (480) 293-7844.

Sincerely,


Cedric McCray
Claim Specialist
(480) 293-7844

State Farm General Insurance Company

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update direct deposit account information for claim payments and many other insurance and banking services.

EXHIBIT D

**State Farm General Insurance Company**
*Home Office, Bloomington, IL*



March 30, 2021

Debra Tudor
3433 Wheeling Dr
Santa Clara CA  95051-6034

**State Farm Claims**
PO Box 106169
Atlanta GA 30348-6169

RE:   Claim Number:       05-17H1-99F
      Date of Loss:       January 20, 2021
      Our Insured:        Debra Tudor

Dear Ms. Tudor:

Thank you for speaking with me on March 29, 2021, regarding the status of your claim.  Please allow this letter to summarize our inspection and conversation.

Our investigation and evaluation of your loss have determined that your damage is not covered by your policy.  It was explained that you noted a dishwasher error signal on the unit after it ran overnight on date of loss.  You removed the kick plate under the dishwasher and noted foam pad wet under dishwasher. Your plumber confirmed the dishwasher had failed.  You noted vinyl flooring warped and uneven on March 7, 2021 and filed the claim the next day on March 8, 2021.

Our inspection and investigation found no signs of covered accidental direct physical loss.  As we discussed, the damages noted indicated repeated water leakage from the dishwasher failure.  The predominant cause of the loss is wear, tear, or latent defect of the dishwasher and or it's plumbing which resulted in continuous and repeated leakage of water resulting in mold and deteriorated damages.  Your policy FP-7955 CA modified by Endorsement FE-3422 specifically excludes coverage for this type of damage and states in part:

**SECTION I - LOSSES INSURED**

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

The following exclusions are applicable to your loss:

**SECTION I - LOSSES NOT INSURED**

1.      We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does

05-17H1-99F
Page 2
March 30, 2021

not apply if the loss is caused by a peril which is not otherwise excluded.

2.  We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

    h.  corrosion, electrolysis or rust;

    i.  wet or dry rot;

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

4.  We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    c.  **Water**, meaning:

        (5)  continuous or repeated seepage or leakage of water or steam from a:

            (a)  heating, air conditioning or automatic fire protective sprinkler system;

            (b)  household appliance; or

            (c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

    f.  **Fungus**, including:

        (1)  any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

        (2)  any remediation of **fungus**, including the cost or expense to:

05-17H1-99F
Page 3
March 30, 2021

      (a)    remove or clean the **fungus** from covered property or to repair, restore or replace that property;

      (b)    tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

      (c)    contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

      (d)    remove any property to protect it from presence of or exposure to **fungus**;

(3)    the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

However, we will pay for loss as specified under **SECTION I – PROPERTY SUBJECT TO LIMITATIONS**.

5.    We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.    conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b.    defect, weakness, inadequacy, fault or unsoundness in:

(1)    planning, zoning, development, surveying, siting;

(2)    design, specifications, workmanship, construction, grading, compaction;

(3)    materials used in construction or repair; or

(4)    maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c.    weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

05-17H1-99F
Page 4
March 30, 2021

Under **SECTION I - PROPERTY SUBJECT TO LIMITATIONS**, your policy provides limited coverage for damage due to fungus (mold) if the predominant, or most important, cause of a loss is covered under **SECTION I** of the policy or directly results from one of the named perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.**

The coverage provided by Endorsement FE-3422, Homeowners Policy Endorsement, does not apply to your claim, as the predominant cause of your loss, wear, tear, deterioration and/or latent defect, are excluded under **SECTION I - LOSSES NOT INSURED**, and mold/fungus was not a direct result from one of the named perils described in **SECTION I - LOSSES INSURED, COVERAGE B PERSONAL PROPERTY.**

If you have questions regarding any part of your claim and would prefer to discuss it with a person other than me, please feel free to contact Team Manager Ken Siegfried, State Farm Insurance Companies, at 844 458 4300, ext. 4802938315.

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

The California Fair Claims Settlement Practices Regulations state that you must be notified of the following policy provision concerning suits against State Farm:

SECTION I - CONDITIONS

> 6.    **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

The one-year period referred to does not include the time we take to investigate your claim. The time from the date of loss (January 20, 2021) to the date you reported your claim to your agent does count in computing the amount of time that has already expired.  The suit limitation period is again running as of the date of this letter.

This Company does not intend by this letter to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time.

If you have any additional information regarding your claim which has not been previously considered or if you desire any additional explanation regarding this matter, please contact us.

Please provide the claim number on any correspondence you send to us.

If you have any questions or need further assistance, please call us at (844) 458-4300 Ext. 3099940948.

05-17H1-99F
Page 5
March 30, 2021


Sincerely,



Sharon Siu for Cedric McCray
Claim Specialist
(844) 458-4300 Ext. 4802937844

State Farm General Insurance Company

# EXHIBIT 2

STEPHEN M. HAYES (SBN 83583)
STEPHEN P. ELLINGSON (SBN 136505)
JAMIE A. RADACK (SBN 221000)
HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE LLP
999 Skyway Road, Suite 310
San Carlos, CA 94070
Telephone: (650) 637-9100
Facsimile: (650) 637-9101

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| DEBRA COHEN TUDOR,<br><br>        Plaintiff,<br><br>    vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO. 22CV393342<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S ANSWER TO COMPLAINT** |

Defendant State Farm General Insurance Company, in answer to the unverified Complaint of plaintiff herein, herewith denies each and every, all and singular, the allegations of said unverified Complaint, and in this connection this answering defendant denies that plaintiff has been injured or damaged in any of the sums mentioned in said unverified Complaint, or in any sum, or at all as the result of any act or omission of this answering defendant.

AS A FIRST, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that said Complaint fails to state facts sufficient to constitute a case of action against this answering defendant.

AS A SECOND, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges plaintiff's claims are barred because plaintiff failed to comply with the terms and

conditions of the insurance policy or policies at issue in the Complaint, and because said policy or policies afforded no coverage or coverage was barred by one or more exclusions, policy limits or deductibles.

AS A THIRD, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that plaintiff has waived and is estopped and barred from alleging the matters set forth in the Complaint.

AS A FOURTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that at all times and places mentioned in the Complaint herein, plaintiff failed to mitigate the amount of her damages.  The damages claimed by plaintiff could have been mitigated by due diligence on her part or by one acting under similar circumstances.  Plaintiff's failure to mitigate is a bar to her recovery under the Complaint.

AS A FIFTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that the injuries allegedly sustained by plaintiff were either wholly or in part caused by plaintiff or persons, firms, corporations or entities other than this answering defendant.

AS A SIXTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that at all times and places mentioned in the Complaint herein, plaintiff failed to perform certain conditions precedent that were imposed upon plaintiff by contract.  The non-performance of said conditions excused defendant's obligations under the contract.

AS A SEVENTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that plaintiff cannot assert any contractual claims set forth in the Complaint because plaintiff prevented performance of said contract.

AS AN EIGHTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

defendant alleges that plaintiff cannot assert any contractual claims set forth in the Complaint because plaintiff materially breached said contract.

AS A NINTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that plaintiffs' Complaint, to the extent that it seeks exemplary or punitive damages pursuant to section 3294 of the Civil Code, violates defendant's rights to procedural due process under the Fourteenth Amendment of the United States Constitution, and the Constitution of the State of California, and therefore fails to state a cause of action upon which either punitive or exemplary damages can be awarded.

AS A TENTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that plaintiffs' Complaint, to the extent that it seeks punitive or exemplary damages pursuant to section 3294 of the Civil Code, violates defendant's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17, of the Constitution of the State of California, and violates defendant's rights to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of California, and therefore fails to state a cause of action supporting the punitive or exemplary damages claimed.

AS AN ELEVENTH, SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleges that the alleged causes of action set forth in the Complaint are, and each of them is, barred by sections 335 et seq. of the Code of Civil Procedure of the State of California, including but not limited to sections 337, 338, 339 and 340.

WHEREFORE, this answering defendant pray for judgment as follows:

1.     That plaintiff takes nothing by her Complaint;

2.     For costs of suit incurred herein; and

3.     For such other and further relief as the Court deems proper.

/ / /

1915499

- 3 -

1  Dated:  February 22, 2022          HAYES SCOTT BONINO ELLINGSON
2                                     GUSLANI SIMONSON & CLAUSE LLP
3                                     By_____
4                                        STEPHEN M. HAYES
                                         STEPHEN P. ELLINGSON
5                                        JAMIE A. RADACK
                                         Attorneys for Defendant
6                                        STATE FARM GENERAL INSURANCE
                                         COMPANY
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1915499                              - 4 -

**CASE NAME:**       **Tudor (Debra Cohen) v. State Farm General Insurance Company**
**CASE NO.:**         **22CV393342**

## PROOF OF SERVICE

      I am a citizen of the United States. My business address is 999 Skyway Road, Suite 310, San Carlos, CA 94070.  I am employed in the County of San Mateo where this service occurs.  I am over the age of 18 years, and not a party to the within cause.  I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

      On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S
ANSWER TO COMPLAINT**

☒    (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Carlos, California.

☐    (BY EMAIL) by transmitting via email the document(s) listed above to the corresponding email address(es), or as stated on the attached service list, on this date before 5:00 p.m.

☐    (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

        Bruce M. Cohen, Esq.
        Julia Machai Cohen, Esq.
        BMCA LAW GROUP, a P.C.
        11693 San Vicente Blvd., #804
        Los Angeles, CA 90049
        Telephone: (424) 287-5400
        Facsimile: (424) 287-5401
        Email: bcohen@bmcalaw.com
                  jvmcohen@bmcalaw.com

        **Attorneys for Plaintiff**
        **DEBRA COHEN TUDOR**

☒    *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 22, 2022, San Carlos, California.

_____
                   Abigail Calderon

**CASE NAME:**   **Tudor (Debra Cohen) v. State Farm General Insurance Company**
**CASE NO.:**

## PROOF OF SERVICE

   I am a citizen of the United States. My business address is 999 Skyway Road, Suite 310, San Carlos, CA 94070.  I am employed in the County of San Mateo where this service occurs.  I am over the age of 18 years, and not a party to the within cause.  I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

   On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTIONS 1332 AND 1441a [DIVERSITY JURISDICTION]; DEMAND FOR JURY TRIAL**

☒ (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Carlos, California.

☐ (BY EMAIL) by transmitting via email the document(s) listed above to the corresponding email address(es), or as stated on the attached service list, on this date before 5:00 p.m.

☐ (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

   Bruce M. Cohen, Esq.
   Julia Machai Cohen, Esq.
   BMCA LAW GROUP, a P.C.
   11693 San Vicente Blvd., #804
   Los Angeles, CA 90049
   Telephone: (424) 287-5400
   Facsimile: (424) 287-5401
   Email: bcohen@bmcalaw.com
       jvmcohen@bmcalaw.com

   **Attorneys for Plaintiff**
   **DEBRA COHEN TUDOR**

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 23, 2022, San Carlos, California.

_____
Abigail Calderon