April 21, 2026
Honorable Peter H. Kang - Courtroom F, 15th Floor
United States District Court Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

**Re:**   *Tudor v. State Farm General Ins. Co.*
**United States District Court Case No. 3:22-cv-01113-RFL**

Dear Judge Kang,

      The Parties submit the following joint letter pursuant to a dispute re: deposition topics, Set 2, for Defendant State Farm's witness under FRCP 30(b)6. Before filing this letter Lead Trial Counsel for both parties extensively met and conferred; no agreement can be reached. By virtue of their disparate geographic locations all meet and confer sessions have taken place by phone.

<u>Plaintiff's Position</u>

Ms. Tudor seeks to depose State Farm's PMQ regarding a range of topics (Set 2), several of which State Farm objects to. Ms. Tudor requests that the Court find that the noticed topics are appropriate and direct State Farm to have their PMQ respond.

Re: timeframe covered by the topics, the period 2014-2024 is relevant because in discovering pattern and practice, it is important to compare State Farm's handling of residential water damage claims before and after the 2017 introduction of its Water Initiative; and before and after its CRSL policy wording change introduced in 2021-2022. Materials in force in 2014-2021 which were, per State Farm, no longer in force at the time Ms. Tudor's claim was handled are relevant, as they provide a point of comparison for how, if it all, State Farm changed their water loss adjusting guidelines/training post-Water-Initiative.

It is well established that claim handling manuals and guidelines and training history are relevant and discoverable in bad faith cases. See *e.g.* Miranda v. First Reliance Standard Life Ins. Co., 2011 WL 2441762, at *4 (N.D.Cal.,2011); Zewdu v. Citigroup Long Term Disability Plan, 264 F.R.D. 622, 628 (N.D. Cal., 2010); McCurdy v. Metropolitan Life Ins. Co., 2007 WL 915177, *4 (E.D. Cal. March 23, 2007).

**Topics 1-5** relate to the type of loss involved in Ms. Tudor's claim, and to elements of State Farm's handling of her claim. **Topic 6** encompasses intended training with regard to all aspects of claim handling touching on her claim. Ms. Tudor is unwilling to limit her questioning to solely "the application of the relevant portions of the Operation Guide, Standard Claim Processes and Jurisdictional References in effect at the time of Plaintiff's claim handling, as well as the application of those procedures to Plaintiff's claim", as she believes those resources reflect only a portion of the relevant training and guidance available to State Farm employees.

State Farm claim adjuster Sharon Siu denied Ms. Tudor's claim on the basis that the loss was excluded under the "continuous or repeated seepage or leakage" ("CRSL") exclusion. **Topics 7-8** relate to the training of Sharon Siu and Teri Epstein with regard to all aspects of claim handling that touch on Ms. Tudor's claim. The fact that Ms. Tudor has already taken depositions of Ms. Siu and Ms. Epstein is irrelevant, especially given that Ms. Siu testified inconsistently about her training with regard to identifying whether a leak is continuous or repeated, first stating that she had received no formal training whatsoever since her first year of State Farm employment, and later stating that she received training "yearly" and "all the time". Ms. Siu's manager Teri Epstein testified that she had never received any training on the definition of "continuous", "repeated", and "leakage", and testified inconsistently about the definition and inherent character of leaks and leakage. On her counsel's instruction, Ms. Epstein refused to answer the question of whether there are any leaks that are not continuous.

**Topics 9, 11, 13-14, 16, 18, 37-46:** Ms. Tudor's right to information relating to outcomes of similar cases is well established. "Discovery aimed at determining the frequency of alleged unfair settlement practices is therefore likely to produce evidence directly relevant to the action. Other instances of alleged unfair settlement practices may also be highly relevant to plaintiff's claim for punitive damages. " *Colonial Life Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785, 791 (Cal. 1982)  In this case, the central issue as to coverage is the application of the CRSL exclusion to Ms. Tudor's dishwasher water loss claim. The proportion of California homeowner water loss claims denied for the CRSL exclusion over the period of interest is relevant; as are the outcomes within the narrower category of all California homeowner dishwasher water loss claims over that period. As to topics 9-18, Ms. Tudor is willing to limit the topics within these parameters. Additionally, Ms. Tudor simplifies topics **9, 11, 13-14, 16, 18** as follows: "Outcomes (i.e. number and percentage of such claims which were denied in whole or in part due to an alleged exclusion for "continuous or repeated seepage or leakage" or similar

1

exclusion language (as may be applicable to policy versions pre-dating or post-dating the policy version in effect for PLAINTIFF at the time or her loss)" for the various claim handlers or reviewers or groups thereof.

These topics' value includes discovering 1) how claim outcomes changed, if at all, pre/post-Water Initiative and pre/post-HW-2105 policy implementation; 2) whether Sharon Siu was truthful about how many claims she approved/denied of various types; 3) whether Sharon Siu or Teri Epstein's team was more likely to deny water loss claims than other similarly situated personnel; 4) whether Sharon Siu's statement that water losses caused by a dishwasher leak are categorically excluded from coverage is consistent with State Farm's actual practice of handling claims for such losses. Regarding 4), State Farm's text for this letter provided at 1:55 pm on 4/20/26 stated that "nor did Siu or Epstein testify that all dishwasher claims are excluded rendering impeachment testimony here unnecessary". But Siu's 6/25/2024 deposition testimony included the following:

"BY ATTORNEY COHEN:

· · Q. When you met on the 29th, did you tell Ms. Tudor that the policy did not cover water damage resulting from a dishwasher leak?

· · · · ·ATTORNEY ELLINGSON: Objection, asked and answered.

· · · · ·THE WITNESS: Yes."

**Topic 20:** State Farm's record-making, -keeping, and -retention policies are relevant to Ms. Tudor's right to discover what records exist or should exist of communications between personnel involved in handling her claim, e.g. of communications between Ms. Siu and other State Farm personnel on the morning of Ms. Siu's visit to her house.

**Topics 24:** Documents bearing on State Farm's coverage decision and/or handling of Ms. Tudor's claim are relevant. Ms. Tudor contends that it is possible that State Farm was more likely to deny more costly claims. Documents that bear on water loss coverage and handling are self-evidently relevant; other documents that bear on State Farm's estimates regarding the expected cost of Ms. Tudor's claim if coverage had not been revoked are relevant as well.

**Topics 25-28:** Case law is clear that it is State Farm's burden to provide the information in question since such information is required in the event a bad faith verdict is reached.

**Topics 29-32:** It is well established that personnel evaluations and compensation structure are discoverable in bad faith insurance litigation. "Case law is clear that employee records and evaluations are generally discoverable in bad faith insurance cases. See Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co., No. CV 18-03904-PSG (KSx), 2019 WL 1199024, at *2 (C.D. Cal. Mar. 11, 2019) (explaining that requested evaluations of employees who handled insurance claim "ha[ve] 'routinely been found to be relevant and discoverable' in bad faith actions") (internal citations omitted); Beaver v. Delicate Palate Bistro, Inc., No. 3:17-CV-644-PK, 2017 WL 4011208, at *2 (D. Or. Sept. 12, 2017) (noting that "the courts of the Ninth Circuit generally allow discovery of employment records notwithstanding such privacy and public policy concerns"). Plaintiffs can discover Defendant's employee's personnel files because they "may reveal an inappropriate reason . . . for [D]efendant's action with respect to [P]laintiff[s'] claim," or "an improper company culture" with "improper incentives, financial or otherwise, to deny a claim." Park v. State Farm Fire & Cas. Co., No. 2:23-CV-01564-TL, 2024 WL 4494877, at *6 (W.D. Wash. Oct. 15, 2024) (citing Lieberman, 2021 WL 4807643, at *7)." (CIVIL MINUTES – GENERAL, 13, Tong v. State Farm General Insurance Co., No. 2:24-cv-02219-DSF-MAR, C.D. Cal. Dec. 20, 2024.)

State Farm's objection that responding would be burdensome is unavailing because Ms. Tudor only requests information related to "individual-level claim metrics that YOU tracked in

2

2014 - 2024 with regard to Sharon Siu, Teri Epstein, Cedric McCray, or Ken Siegfried", i.e. only metrics that were *already tracked*.

**Topics 33-35** seek information on State Farm's intended definitions of, intended training surrounding, and actual training regarding, words used in Ms. Tudor's policy which bear on the crux of the coverage dispute: "continuous", "repeated", "seepage", "leakage", and "leaks". Given that State Farm denied Ms. Tudor's claim on the basis of its CRSL exclusion, it is preposterous to argue that these topics are irrelevant to the claims or defense of any party. State Farm objects that the policy speaks for itself; but the policy fails to define any of these terms.

**Topics 37-40:** State Farm claims that these requests would require significant man hours reviewing claim files. With the advent of AI, which State Farm advises it has been using in its discovery production, it is unclear that this would actually require much manual intervention at all. In addition, Ms. Tudor would be happy to suggest alternate low-burden methods of obtaining the information upon request or order.

Per *Colonial Life*, **Topic 41** is relevant in that it seeks information about claims that were treated similarly to Ms. Tudor's claim (initially approved, later denied). If Ms. Tudor's proposed revisions to Topics 9-18 are accepted, **Topics 43-45** are withdrawn.

State Farm states that **Topic 46** would require significant of man hours reviewing claim files. However, as with Topics 37-40, there are other ways of gathering the information that are less burdensome and more accurate; more information available upon request or order.

**Topic 48** involves State Farm's representations to the CA Dept of Insurance re: its 01-19163 filing re: its then-proposed FE-5400 Seepage or Leakage Exclusion Endorsement and its 11-4382 filing re: its then-proposed transition from FE-5400 to FE-3422 containing the same CSRL exclusion language. Those representations are key to understanding State Farm's intent as to the meaning of "continuous or repeated seepage or leakage"; to the definition, or lack thereof, of the terms in that phrase; and to the question of whether State Farm has misrepresented to the CA Dept of Insurance its intended or actual application of that exclusion.

<u>Defendant's Position</u>

This case is about the denial of Plaintiff's uncovered claim for a dishwasher leak over a period of time, due to the policy exclusion for losses caused by a continuous or repeated leakage of water.  (See, Dkt. 82)  Discovery should concern that claim and State Farm's defenses to it. Plaintiff, however, seeks to engage in a massive "fishing expedition" for testimony on another 48 broad topics irrelevant to the handling of her claim and disproportional to the needs of the case. FRCP 26(b)(1).  Courts "have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices." *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593 at *8 (C.D. Cal. Oct. 16, 2016); *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 107 (D. Nev. 2023) (preparing a Rule 30(b)(6) deponent "becomes less realistic and increasingly impossible as the number and breadth of the notice subject areas expand").  The topics herein would be disproportionate as RFPs or Interrogatories, and seeking *testimony from a corporate representative* regarding these topics *amplifies* their impropriety.

**Topics 1-6** seek testimony related to standards, policies, rules, procedures and training materials for handling claims *over an overly broad 10-year period*.  Testimony regarding materials which were obsolete on the date of loss, pertain only to other losses, and only to other areas of the country, are neither relevant to a claim or defense in this action nor proportional to the needs of the case.  FRCP 26(b)(1).  State Farm has agreed to produce a witness to testify regarding claim handling procedures and materials representative of resources available during the relevant timeframe for the handling of Plaintiff's claim.  Plaintiff unreasonably seeks more.

**Topics 9, 11, 13-14, 16, 18, 37-46** seek testimony regarding a wide range of *other* claims made by *other* insureds over a 10- year period.  These topics are irrelevant and overbroad in time

and scope, seeking testimony regarding claims involving different policies, coverages, terms, and endorsements, different properties of different ages, in different conditions, at different times, with different claimants and claim personnel, and different mechanisms and facts of loss (*not even limited to water losses*). Testimony regarding other claims, and/or what may or may not have occurred in another claim, will neither prove nor disprove any claims and/or defenses at issue here, but could violate the privacy rights of others not party to this litigation.  As such, these topics are neither relevant nor propionate to the needs of the case. FRCP 26(b)(1); *Alvarado-Herrera*, 344 F.R.D. at 110 (granting protective order re 68-topic deposition notice issued to insurer in breach of contract and bad faith case).

These Topics are also unduly burdensome because substantial manual effort would be required to compile the information sought – much less prepare a representative to testify about this information.  *Id*.  Plaintiff seeks testimony regarding percentages of prior claims broken down into a variety of granular categories, including claims paid, denied, partially paid and partially denied, the amount paid, claims denied based on the continuous leakage exclusion, and claims in which coverage determinations changed over time.  Almost all information sought would require a detailed, manual review of at least hundreds of thousands of claim files throughout California for a ten-year time period. [1]  State Farm does not maintain its records in a way to easily develop the answers to these nuanced questions.  Individual file reviews would be required to determine the answers to each of the individual questions raised for each topic before that information could be aggregated by region or category.  The time required to review a universe of potentially hundreds of thousands of claim files to satisfy each request, even as purportedly narrowed by Plaintiff herein, could surpass the remaining discovery time in this case.  And, based on experience, the anticipated cost to review the universe of claim files alone for the information sought could be seven figures. *All this must occur before a corporate representative would have to learn this information in order to competently testify on behalf of State Farm.*

Plaintiff relies on *Colonial Life, supra,* in which discovery was permitted of **a mere 35 claims,** to support her claim for punitive damages.  In fact, courts regularly find such sweeping discovery to be inappropriate, oppressive, and disproportionate to the needs of the case.  *See, e.g., Mead Reinsurance Co. v. Superior Court (1986)* 188 Cal.App.3d 313, 315 (discovery requests which required reviewing thousands of claim files, at more than 700 man-hours, were "prima facie" oppressive)*; Dobro v. Allstate Insurance Co.,* 2016 WL 4595149, (S.D. Cal. Sept. 2, 2016), at p. 6 (denying discovery from 10,082 water damage claims that had been denied based on the same policy exclusion at issue).

Plaintiff's claim that she needs this discovery to impeach Siu's testimony also fails.  Siu testified she could not recall how many claims she approved or denied, nor did Siu or Epstein testify that all dishwasher claims are excluded rendering impeachment testimony here unnecessary.  Plaintiff's cited deposition testimony is taken out of context.  Sui testified as follows: "So is it correct, then, that some water damages from dishwasher failures are covered and other water damages from dishwasher failures are not covered?... The witness: I would say yes."  And the *testimony* sought here is far more expansive than these simple points.

To the extent any of this information could be relevant for punitive damages, due process prohibits punishing a defendant for alleged injuries caused to non-parties.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

If the Court is inclined to grant Plaintiff's *Colonial Life* discovery, State Farm requests

---

[1] Plaintiff wrongly claims State Farm advised that it used AI in connection with the discovery in this case; it has not done so and will not agree to do so here.  Nor would the use of AI eliminate the burdens for a corporate designee to learn the granular information sought from a universe of at least hundreds of thousands of claim files (if not more).

4

the opportunity to fully brief the issue and offer evidence supporting the burden and expense here.  At a minimum, Plaintiff must be required to bear the cost of compliance and post a bond to cover the anticipated amount.  *Mead, supra* at 321.

**Topic 20** demands testimony regarding record retention.  This topic is not limited to communications related to Plaintiff's claim as was a similar request in 30(b)(6) Notice 1 (Dkt. 82), but rather unrestricted communications between all personnel for a ten-year timeframe. This Topic is overbroad, unduly burdensome, and oppressive and is neither relevant nor proportional to the needs of the case.  FRCP 26(b)(1).  As such, it should not be ordered.

**Topic 24** seeks testimony regarding 32 different documents, document categories and videos over an undefined period.  This category is overbroad in time as it is not limited to any time frame, and scope as most of these categories do not apply to Plaintiff's claim and as such, is not relevant to a claim or defense in this action and is not proportional to the needs of the case.  FRCP 26(b)(1).  State Farm offered to produce a witness to testify regarding the claim handling procedures produced in this case, along with a witness to testify regarding its efforts to promote quality claim handling on water loss claims in California for the period January 2019 (two years prior to the date of loss) through the end of claim handling in March 2021, but Plaintiff was not amenable to that reasonable proposal.  State Farm's reasonable approach should be endorsed.

**Topics 25-28** seek testimony regarding State Farm's financial condition from 2021-2026. Requiring *testimony* regarding years of publicly available information is overbroad in scope and time, unduly burdensome and oppressive.  This Topic is not relevant to a claim or defense in this action and is not proportional to the needs of the case.  FRCP 26(b)(1).

**Topics 29-32** seek intrusive testimony regarding *10 years* of employment information. Considerations about the privacy of the impacted individual employees must be navigated in light of the protections afforded by the California Constitution, and the Court must balance Plaintiff's purported need for employment information against the employee's privacy interests. *Liberty Mut. Ins. Co. v. California Auto Assigned Risk Plan*, 2012 WL 892188 (N.D. Cal. 2012). The scope of information, and ten-year period is widely disproportionate to the needs of the case, especially considering that Plaintiffs seek *testimony of a corporate designee* on these topics. Plaintiff's unreported cases do not assist her, as they involved requests for *documents*, not testimony.  The court should not order *testimony* on these topics.

**Topics 33-35** seeks testimony regarding instruction on certain policy language.  On this narrow topic, State Farm will agree to produce a witness to testify as to this information as to Plaintiff's policy.  More should not be required.

**Topic 48** seeks testimony regarding the "intended" meaning of "continuous or repeated seepage or leakage." Policy interpretation is a legal issue not proper for a Rule 30(b)(6) Notice. *HVI Cat Canyon*, 2016 WL 11683593 at *7.  The Court should decline to compel testimony.

Dated: April 21, 2026              BMCA LAW GROUP, A P.C.

                                  By      */S/ Bruce M. Cohen*
                                      BRUCE M. COHEN
                                      Attorney for Plaintiff
                                      DEBRA COHEN TUDOR

Dated: April 21, 2026              HAYES SCOTT BONINO ELLINGSON & GUSLANI, LLP

                                  By      */S/ Stephen P. Ellingson*
                                      STEPHEN P. ELLINGSON
                                      JAMIE A. RADACK
                                      Attorney for Defendant
                                      STATE FARM GENERAL INSURANCE COMPANY