United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEBRA COHEN TUDOR,

Plaintiff,

v.

STATE FARM GENERAL INSURANCE COMPANY,

Defendant.

Case No. 22-cv-01113-RFL (PHK)

**DISCOVERY MANAGEMENT ORDER**

Re: Dkt. No. 107

All discovery matters in this case have been referred to the undersigned. [Dkt. 57]. Now before the Court is a Joint Discovery Management Conference Report by the Parties, which raises numerous discovery disputes for which the Parties seek the Court's guidance. [Dkt. 107]. The Court held a Discovery Management Conference ("DMC") on August 13, 2026. Having considered the Joint Report and argument of counsel at the DMC, the Court issues this Discovery Management Order memorializing its verbal directives from the August 13 DMC (which are hereby incorporated by reference).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may

United States District Court
Northern District of California

limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense

of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

Oral argument regarding the Parties' DMC Joint Report [Dkt. 107] centered on three primary

topics. The Parties, with the assistance of the Court, reached agreement and resolution on each of these topics, as memorialized below.

**Training Transcripts and Underlying Training Materials**

The Parties disagreed about the interpretation of the Court's Order from the June 25, 2026 DMC, which clarified the span of years from which Defendant must produce training transcripts and underlying training materials. *See* Dkt. 100. Plaintiff separately seeks production of nine identified responsive training items of which the titles were "too vague to assess." [Dkt. 107 at 6].

To clarify, Defendant is **ORDERED** to produce the training transcripts and underlying training materials **for three distinct years** as selected by Plaintiff (where, as a matter of proportionality, the Court limited Plaintiff to documents to be produced from one year which predates the claim; one year which post-dates the claim; and one year which is within the range of the year of the claim at issue). Plaintiff confirmed that Plaintiff has already selected 2016 and 2023 as two of the three years from which it desires production (the pre- and post- claim years). Plaintiff **SHALL** identify the specific year, in addition to 2016 and 2023, from which Plaintiff requests Defendant to produce these materials by no later than Monday, August 17, 2026.

Because Plaintiff provided a list of titles of training materials to Defendant to facilitate searching and because there are only three years from which Defendant is required to search and produce such materials, the Court **ORDERS** Defendant to start daily rolling productions of responsive materials on Monday, August 17, 2026, to be completed by no later than Friday, September 4, 2026.

As noted, Plaintiff originally identified the titles of nine training materials (determined from other discovery) that were too vague for Plaintiff to be able to determine whether or not they were relevant and would be sought. At the DMC, the Court overruled the request for two of the titles relating to an ACURINT tool (which Defendant's counsel represented to the Court is not referenced in the claim file at all) and relating to PLUP (Personal Liability Umbrella Policy) which the Parties agreed is not at issue in this case. With regard to the seven remaining title-by-title production requests, Defendant **SHALL** respond and provide information on what each of those seven titles refers to by no later than Monday, August 17, 2026. The Parties **SHALL** meet and confer and reach

final agreement relating to production of these seven outstanding title-by-title training-related materials by no later than Wednesday, August 19, 2026.

The Parties **SHALL** submit a Joint Status Report on the completion of production of all training materials and transcripts by no later than September 9, 2026.

**Other Documents to be Produced by State Farm**

Plaintiff has also requested production of water loss claim documents and so-called "Water Initiative" documents. The Court previously ordered production of these documents from three years to be selected by Plaintiff. As discussed at the DMC, the same custodians for these documents are the custodians for the training materials discussed above. Accordingly, the same three years chosen by Plaintiff shall apply to State Farm's search for and production of these documents. That is, State Farm shall produce these documents (to the extent they exist) from 2016, 2023, and the third year to be identified by Plaintiff by Monday, August 17, 2026.

The Court **ORDERS** Defendant to start daily rolling productions of these water loss claim and Water Initiative documents on Monday, August 17, 2026, to be completed by no later than Friday, September 4, 2026.

Plaintiff has already chosen the three years from which Plaintiff requests production of the requested personnel records (and reconfirmed the selection at the DMC): 2016, 2021, and 2022.

The Court **ORDERS** Defendant to start daily rolling productions of the requested personnel records on Monday, August 17, 2026, to be completed by no later than Friday, September 4, 2026.

The Parties' Joint Status Report due by no later than September 9, 2026 **SHALL** also report on the completion of the production of all of these other documents as well as the training related documents discussed above.

**ESI Protocol**

The Parties have met and conferred but were unsuccessful in finalizing the E-Discovery ("ESI") Protocol which the Court previously ordered them to finalize. The Northern District of California's Model ESI Protocol is "not required, but instructive." See *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2014 WL 12887160, at *2 (N.D. Cal. Dec. 12, 2014) ("[O]ther courts

United States District Court
Northern District of California

in this District have found the procedures set forth in the Model Order, particularly as they pertain to email discovery, to be reasonable).

The Parties are **ORDERED** to meet and confer on this issue immediately and file a Joint Proposed ESI Protocol by no later than Wednesday, August 26, 2026. Consistent with the Court's Standing Discovery Order, the Parties **SHALL** submit a redline of their Proposed ESI Protocol against the Court's model and an attorney declaration that identifies any substantive deviation from the model protocol order. *See* Section C of the undersigned's Standing Discovery Order.

Further, the Court **ORDERS** the Parties to promptly and reasonably complete their meet and confers on the exact ESI Plaintiff seeks from State Farm, using the iterative process discussed by the Court at the DMC (including identification of the specific document requests, specific ESI materials, search terms, hit reports, and counterproposed search terms) in order to achieve the goal of completing ESI production timely. As discussed at the DMC, Plaintiff identified one specific and central ESI sought: the so-called Electronic Claim File for Plaintiff's claim. The Court expects the Parties to reasonably negotiate and identify the other specific ESI to be produced using the interactive meet and confer process. The Court **ORDERS** the Parties to complete their meet and confers on ESI discovery sought by August 28, 2026 so that ESI searches can start promptly thereafter.

The Parties' Joint Status Report due by no later than September 9, 2026 **SHALL** also report on the status of the ESI meet and confers and the timing for production of ESI by State Farm.

**<u>Depositions</u>**

Based on representations made by counsel at the DMC, it appears that the Parties are in the process of scheduling all fact witness depositions. To ensure the Parties remain on track to complete discovery rationally and reasonably, the Court **ORDERS** the Parties to finalize the logistics of all individual depositions by Friday, August 21, 2026. This includes the depositions of Mr. Kirby, Mr. Weiss, Ms. Siu, Ms. Epstein, Mr. McCray, and Mr. Siegfried. The Parties **SHALL** read and comply with the undersigned's Standing Discovery Order regarding the conduct of depositions, proper and improper objections, the limited bases on which a witness can be properly instructed not to answer

a question, and professionalism expected by all counsel.

As to the further deposition of Ms. Siu, based on the representation of Plaintiff's counsel that he will not rehash topics on which she was previously deposed, it is **ORDERED** that the further deposition of Ms. Siu will be limited to three hours on the record. The Parties **SHALL** promptly and reasonably meet and confer to finalize logistics for this further deposition of Ms. Siu.

For similar reasons, as discussed at the DMC, the deposition of Mr. Kirby is to proceed for three hours on the record at a reasonable location in the East Bay (any location within thirty miles from his residence is presumptively reasonable). After that three hour time on the record, counsel are **ORDERED** to immediately and reasonably meet and confer to reach agreement on whether any further deposition time for Mr. Kirby is appropriate and how much is appropriate (particularly in light of any health issues) and the Court expects counsel to reasonably cooperate in reaching agreement on these issues.

After reasonable and diligent inquiry, Defendant's counsel **SHALL** identify to Plaintiff's counsel the people referred to as "TM", "Strip Team", and "someone from central" (identified as such in instant messages produced in February 2026) by no later than Friday, August 21, 2026. The identification of these persons **SHALL** be used by the Parties as the basis for meet and confers on whether or not their depositions need to be taken and, if so, the scheduling and logistics for such depositions. The Court **ORDERS** the Parties to reasonably cooperate and coordinate on these issues (as with all other discovery issues).

As to the Rule 30(b)(6) deposition of State Farm, Defendant is **ORDERED** to identify its 30(b)(6) designees to Plaintiff by no later than Tuesday, August 18, 2026 and the Parties **SHALL** promptly and reasonably meet and confer to finalize logistics as to the 30(b)(6) depositions by no later than Friday, August 21, 2026.

**CONCLUSION**

The next DMC is **SET** for Thursday, September 10, 2026 at 1:30 PM. The Parties **SHALL** file their next Joint Discovery Management Conference Report on September 4, 2026. The Parties are reminded to format Joint Discovery Management Conference Reports by first identifying the "ripe" disputes and then secondly identifying the "unripe" disputes (and with respect to these, any

United States District Court
Northern District of California

unripe disputes for which the Parties seek the Court's guidance or clarification and the reasons why).

All other rulings, directives, and deadlines set verbally at the DMC are incorporated by reference to the extent not expressly discussed in the instant DMO.

**IT IS SO ORDERED.**

Dated: August 17, 2026

PETER H. KANG
United States Magistrate Judge