SANDRA E. STONE (SBN 161267)
sstone@plawp.com
PACIFIC LAW PARTNERS, LLP
2000 Powell St., Suite 950
Emeryville, CA 94608
Tel: (510) 841-7777
Fax: (510) 841-7776

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA COHEN TUDOR,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 3:22-cv-01113-RFL<br><br>**STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER**<br><br>[Filed Concurrently with Declaration of Sandra E. Stone; Declaration of Tanya E. Potts; and [Proposed] Order] |

Pursuant to Section 6.3 of the Protective Order in this matter, State Farm General Insurance Company ("State Farm") hereby moves the Court to grant State Farm's request to retain the confidentiality designations on State Farm's Supplemental Responses to Plaintiff's Special Interrogatories, Set One and Requests for Production, Set One and Two served on July 16, 2026 and State Farm's Amended Supplemental Responses to Plaintiff's Special Interrogatories, Set One and Requests for Production, Set One and Two served on August 7, 2026.

This request is being made after Plaintiff's challenge to that confidentiality designation and after repeated attempts to meet and confer did not resolve this matter and Plaintiff's insistence that State Farm's file this motion or risk losing the confidentiality asserted in its responses. This motion was made as expeditiously as possible following Plaintiff's August 14, 2026 communication advising of her position that August 20, 2026 was the last day to file this motion.

As detailed below and in the accompanying declarations of Sandra E. Stone and Tanya E. Potts, the materials described in State Farm's discovery responses are confidential and release of that information to the public would result in competitive harm to State Farm as well misuse of this information in other matters.

Dated: August 20, 2026 PACIFIC LAW PARTNERS, LLP

By *_____/s/ Sandra E. Stone_*
SANDRA E. STONE
Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES .......... 4

I. INTRODUCTION .......... 5

II. FACTUAL BACKGROUND .......... 6

A. *Plaintiff's January 2021 Dishwasher Leak and March 2021 Claim to State Farm* .......... 6

B. *Resulting Lawsuit and Discovery* .......... 6

C. *Meet and Confer Efforts* .......... 8

D. *Relevant Protective Order* .......... 9

E. *Usage of State Farm's Confidential Information Gathered From Lists of Document Titles In Other Matters* .......... 10

III. LEGAL ARGUMENT .......... 10

A. *The Need to Protect State Farm's Confidential & Trade Secret Information Supports Maintaining Confidentiality* .......... 11

B. *The Need to Prevent Usage of Confidential Material In Other Matters Supports Maintaining Confidentiality* .......... 13

IV. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases**

*Albert Organics, Inc. v. Holzman*
(N.D. Cal. 2021) 445 F.Supp.3d 463 .......... 11
*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc*
(2014) 226 Cal.App.4th 26.......... 11, 12
*Cisco Systems, Inc. v. Chung*
(N.D. Cal. 2020) 462 F.Supp.3d 1024 .......... 11
*Cleveland v. Ludwig Inst. For Cancer Research Ltd.*
(S.D. Cal. Oct. 27, 2021) 2021 WL 4993025 at **11-12.......... 14
*Concord Music Grp.*
(N.D. Cal. Dec. 31, 2025) 2025 WL 3773754 at ** 2-3.......... 15
*In re Adobe Sys., Inc. Sec*
(N.D. Cal. 1992) 141 F.R.D. 155 .......... 12
*In re eBay Seller Antitrust Litig.*
(N.D. Cal. May 25, 2010) 210 WL 2106004, at *1-2 .......... 12
*Kai v. Allstate Insurance Co.*
(D. Hawaii Dec 11, 2020 No. CV 20-00203 WRP).......... 12
*Mahboob v. Educ. Credit Mgmt. Corp.*
(S.D. Cal. Mar. 2, 2021) 2021 WL 818971 at *3.......... 14
*McGuan v. Endovascular Technologies, Inc.*
(2010) 182 Cal.App.4th 974.......... 11-12
*On Command Video Corp.*
(1997) 976 F.Supp. 917.......... 14
*Tong v. State Farm General Insurance Company*
(C.D. Cal. Dec 20, 2024 No. 2:24-CV-02219-DSF-MAR) .......... 10, 13, 14

**Statutes**

Code of Civil Procedure section 3426.1(d) .......... 11

## I. INTRODUCTION

In compliance with Judge Kang's June 25, 2026 instructions, State Farm supplemented its discovery responses to identify with specificity the various State Farm training and resource documents that it had produced in this matter. To ensure it was clear which documents were responsive to which of Plaintiff's topics, State Farm's responses included identification of the subject matter, along with a list of the documents' titles and Bates numbers.

The vast majority of State Farm's training, manual and other resource materials, including the materials produced in this matter, are proprietary and confidential documents that are created by State Farm and intended for use by State Farm personnel – the very reason that State Farm only produces these documents subject to a Protective Order. While no individual title may be concerning on its own, because the titles are specific about the nature and content of the various training and resource modules, collectively the information reflected in those titles constitutes a compilation which essentially provides a roadmap for how State Farm trains its employees on various topics. Release of this information in a "batched" format such as lists on particular topics can create competitive harm.

For that reason, State Farm marked its supplemental discovery responses as highly confidential under the protective order that has been issued in this case. After an initial objection by Plaintiff to the choice of demarcation and format State Farm used, State Farm amended its supplemental responses to address those concerns and only marked as "Confidential" the pages on which the lists of documents appeared. It served those amended responses on August 7, 2026.

On August 14, 2026, Plaintiff advised that she considered the issue still open and that State Farm had until August 20, 2026 to file a Motion to Retain Confidentiality or risk losing the confidentiality of the responses. After further meet and confer efforts were unsuccessful, State Farm proceeded to file the instant motion.

## II. FACTUAL BACKGROUND

### A. *Plaintiff's January 2021 Dishwasher Leak and March 2021 Claim to State Farm*

In January 2021, Plaintiff discovered a leak in her dishwasher at her home in Santa Clara, California. After an "error" light came on, Plaintiff investigated why the dishwasher had malfunctioned including taking a video of the leak. The video shows a "continuous" water leak . Her State Farm policy specifically excludes coverage for a "continuous" or "repeated" water leak. Months later, Plaintiff noticed damage to her kitchen floor and ultimately submitted a claim to State Farm on March 8, 2021.

State Farm inspected the loss and discovered evidence of a long-term leak, including warping to the vinyl flooring in kitchen. In addition, the photo of the cavity behind the dishwasher showed evidence that water had been wicking up the sides of the cabinets. Based on the evidence, State Farm denied Plaintiff's claim because her policy excluded coverage for a "continuous or repeated seepage or leakage of water."

### B. *Resulting Lawsuit and Discovery*

Unhappy with State Farm's decision, Plaintiff filed suit on January 12, 2022. [Doc. 1 at p.6]. Since then, Plaintiff has undertaken a wide range of discovery focused on State Farm's training and adjustment of water losses from 2014 onward. This has included numerous document requests and interrogatories seeking related information and documents.

In response to these discovery requests and in addition to producing the claim file, relevant email correspondence and underwriting information, State Farm has already produced over 2,000 pages of documents unrelated to the specifics of Plaintiff's claim. (Declaration of Sandra E. Stone "Stone Decl.", ¶2) These include State Farm training documents, claims resources and a variety of similar internal materials—the overwhelming majority of which State Farm treats as confidential. (Stone Decl., ¶2; Declaration of Tanya E. Potts ("Potts Decl."), ¶9). Consistent with the sensitivity of these documents, State Farm's institutional documents were produced pursuant to the Protective Order entered in this case and were marked as confidential. (Doc. 74 & Stone Decl. ¶2).

Following the submission of a series of discovery letters [Docs. 82-90] regarding State Farm's discovery responses, on June 25, 2026, Judge Kang held a Discovery Hearing. At the hearing, State Farm's counsel confirmed that State Farm had already produced a variety of non-claim related documents—including documents related to water losses. Because that production occurred after the original responses were served, the responses did not identify the specific documents. (Stone Decl., ¶3 ) Judge Kang instructed that State Farm supplement its discovery responses to identify those documents and clarify what had been produced in responses to the various discovery requests. (Stone Decl., ¶4)

As instructed by Judge Kang, State Farm served supplemental discovery responses to Plaintiff's Interrogatories Set One and Requests for Production Set One and Two on July 16, 2026. (Stone Decl., ¶5) Those supplemental responses included a description of the type of documents that had been provided, e.g. "Claims Resource Materials", followed by a list of the documents by both title and Bates numbers. (Stone Decl., ¶5)

Because State Farm's documents titles reflect the contents of the documents, they collectively can provide an outline of how State Farm trains its employees on a particular topic. (Potts Decl., ¶14.) State Farm wants to ensure that this information remains confidential to avoid competitive harm that can result if the "roadmap" is made public. (Potts Decl., ¶¶9-14). For that reason, the supplemental responses were marked "highly confidential". (Stone Decl., ¶6)

**C. *Meet and Confer Efforts***

On July 30, 2026, Plaintiff's counsel wrote challenging the confidential designation of the materials identified in State Farm's supplemental responses. That objection also included the choice of confidentiality wording and the fact that the confidential screening was on every page. (Stone Decl., ¶7 & Ex. A) Upon review of those concerns, State Farm's counsel indicated that she would amend the supplemental responses to include a "Confidential" screen and would limit that solely to the pages where the documents titles were listed. (Stone Decl., ¶8 & Ex. B)

On August 7, 2026, State Farm served its Amended Supplemental Responses to Plaintiff's Interrogatories Set One and Requests for Production Set One and Two. That set used the "Confidential" wording, mirroring what was on the documents themselves, and only included that screening on the pages with the lists of titles grouped by subject matter. The amended supplemental responses replaced the original supplemental responses in full. (Stone Decl., ¶10.)

Despite the amended responses, Plaintiff advised via email on the evening of Friday, August 14, 2026 that she still considered issues raised to the original supplemental responses open. (Stone Decl., ¶11 & Ex. C.) Moreover, the email advised for the first time that it was Plaintiff's position that despite State Farm's service of amended responses on August 7th, State

Farm's time to file a Motion to Retain Confidentiality had been "running from Plaintiff's July 30 challenge" and that State Farm's deadline to file this motion was August 20, 2026 or State Farm risked losing the confidentiality designation. (Ex. C.)

Given the August 7, 2026 amended supplemental responses, it was unclear to State Farm exactly what remained at issue and it requested clarification from Plaintiff. (Stone Decl., ¶12 & Ex. D) Plaintiff's responses continued to maintain that her challenge related to the discovery responses (including the responses which had been served on August 7, 2026) remained open and reiterated that State Farm had until August 20, 2026 to file this motion. (Stone Decl., ¶13 & Ex. E & F)

After a further telephone conference failed to narrow or resolve this issue, and faced with Plaintiff's threat to have State Farm's confidential information stripped of that protection, State Farm proceeded to file this motion. (Stone Decl. ¶14)

**D. *Relevant Protective Order***

The Protective Order in this matter [Doc 74] includes the following language:

> **3. SCOPE**
>
> The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

[Doc 74 @ p. 3:14-18, emphasis added]

### E. *Usage of State Farm's Confidential Information Gathered From Lists of Document Titles In Other Matters*

Beyond concerns about maintaining its competitive advantage, State Farm has had to contend with plaintiffs' counsel using information contained in State Farm's confidential materials produced in one case in pursuing other cases against State Farm. This has included use of Bates ranges of document productions, the titles of confidential documents, and the contents of such documents in other litigation.

Statements submitted in *Pachall v. State Farm* (San Diego Superior Case No. 37-2022-00044176-CU-IC-CTL) are illustrative of the problem State Farm faces. There plaintiffs' counsel in another matter acknowledged that he "relied on the existence of confidential information produced in [*Pachall*] to make discovery requests in two matters" against State Farm, but contended that because he only "<u>cited titles and Bates numbers</u>" that did not violate the protective order in place in that matter. (Stone Decl., ¶16 Ex. G at ¶ 6, emphasis added). In addition, lists of training materials have even been copied and published on the website of a plaintiffs' firm who frequently litigates against State Farm. (Stone Decl. ¶17)

State Farm is concerned with exactly that type of improper usage occurring as a result of releasing lists of State Farm's resource and training documents in this matter.

## III. LEGAL ARGUMENT

At the outset, State Farm does not contend that reference to a Bates number or document title, standing alone, would necessarily trigger a concern. However, as the Central District has recognized, a compilation or grouping of State Farm's materials may present a legitimate risk of harm. (See *Tong v. State Farm General Insurance Company* (C.D. Cal., Dec. 20, 2024, No. 2:24-CV-02219-DSF-MAR) 2024 WL 5472414, at *4.) It is just

such a compilation of information, extracted from confidential documents and summarized in lists, that is at issue here.

The protective order in place in this case specifically includes "…not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material….;" [Doc 74 pg. 3:15-17, emphasis added] The lists of document titles and descriptions in State Farm's responses are copied or extracted from Protected Material that State Farm believes are confidential and deserve protection. (Stone Decl., ¶5; Potts Decl., ¶¶3 & 14).

**A. *The Need to Protect State Farm's Confidential & Trade Secret Information Supports Maintaining Confidentiality***

A trade secret has independent economic value if it is unknown to one's competitors and provides an economic advantage over others. (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 62.) The economic advantage may be actual or potential. (*Cisco Systems, Inc. v. Chung* (N.D. Cal. 2020) 462 F.Supp.3d 1024, 1052.) This potential advantage need not be great, but must be more than trivial. (*Altavion, supra*, 226 Cal.App.4th at p. 62.) The standard to establish economic advantage is not high. (*Cisco Systems, supra*, 462 F.Supp.3d at p. 1052.)

Documents that describe procedures integral to a company's business may provide an economic advantage over competitors. In such a case, those procedures constitute trade secrets. [1] (*McGuan v. Endovascular*

---

[1] California's Uniform Trade Secrets Act defines "trade secret" as information that derives independent economic value from not being known to other persons and which is the subject of reasonable efforts to maintain its secrecy. (Cal. Civ. Code, § 3426.1(d).) In this definition, "information" has a broad meaning. (*Albert's Organics, Inc. v. Holzman* (N.D. Cal. 2020)

*Technologies, Inc.* (2010) 182 Cal.App.4th 974, 988-989 [discussing the evidence supporting the trial court's determination that audit reports should be sealed on the ground that they contained trade secrets].)

Courts have recognized that documents such as claims manuals, claims resources and claims training "contain business information about . …. handling of specific insurance claims that is not publicly available and may result in competitive harm to [the carrier] if publicly disclosed." (*Kai v. Allstate Insurance Co.* (D. Hawaii, Dec. 11, 2020, No. CV 20-00302 WRP) 2020 WL 9762913, at *3; citing *In re Adobe Sys., Inc. Sec. Litig*., 141 F.R.D. 155, 158 (N.D. Cal. 1992) ("Good cause may be that the protected information includes proprietary and technical information, financial information and business strategy or marketing information which, if revealed to a competitor, would put a company at a competitive disadvantage.")).

Unlike many carriers, State Farm develops its own materials using significant resources. (Potts Decl., ¶¶6-8.) Knowledge of the information described in State Farm's Supplemental Discovery Responses would give State Farm's competitors an unfair advantage in the residential property insurance market. (Potts Decl., ¶14.) Allowing public access to even a compilation of titles of State Farm's confidential materials allows other insurance companies, at no cost and with no expenditure of time and resources, information regarding State Farm's approach to educating its claims force, including valuable business techniques, programs, and

---

445 F.Supp.3d 463, 471, citing *Altavion, supra,* 226 Cal.App.4th at p. 53.) "The definition of trade secret is ... unlimited as to any particular class or kind of matter and may be contrasted with matter eligible for patent or copyright protection, which must fall into statutorily defined categories." (*Ibid*., citing *Altavion*.)

information that were developed as a result of State Farm's significant investment of time, manpower and financial resources. This would dilute the effectiveness of State Farm's investment and cause irreparable harm to State Farm. (Potts Decl., ¶¶12-14.) For that reason, State Farm takes extensive steps to guard those materials from disclosure. (Potts Decl., ¶¶9-10.)

Dissemination of these materials would harm State Farm. Their contents would provide State Farm's competitors with a "blueprint" at no cost to those competitors. The product of State Farm's investment of time, experience, and money would then be used to deprive State Farm of its competitive advantage (Potts Decl., ¶¶12-14.)

That is particularly true when a large number of training courses and/or resources are grouped together in lists as was done in State Farm's supplemental discovery responses. While one or two titles might not assist competitors—a large number of titles representing a variety of years (such as those reflected in State Farm's discovery responses) do create potential competitive harm. (Potts Decl., ¶¶14, 17-18).

### B. *The Need to Prevent Usage of Confidential Material In Other Matters Supports Maintaining Confidentiality*

In addition to usefulness to State Farm's competitors, allowing the public dissemination of lists of State Farm's confidential documents allows counsel in one State Farm matter to "share" that information for use in other actions against State Farm.

Without protecting the titles as well as the actual documents, State Farm's confidential information can simply be copied and posted on websites and listservs. Judge Rocconi recognized the harm that this inflicted on State Farm in her ruling in the *Tong v. State Farm* case, when the Court granted State Farm's motion for a protective order after

reviewing evidence of sharing of descriptive titles of State Farm documents. [*Tong v. State Farm General Insurance Company* (C.D. Cal., Dec. 20, 2024, No. 2:24-CV-02219-DSF-MAR) 2024 WL 5472414, at *4 ("Also, a list of Defendant's 'confidential training material and claims guidelines identical to a list compiled by Plaintiffs' counsel [in another case] . . . appeared as a blog post on the website of another plaintiffs' [law] firm who also frequently handled cases against [Defendant].' [cite omit].")]

It is just this type of use that protective orders are designed to prevent. *See, e.g.*, *On Command Video Corp.*, (1997) 976 F.Supp. 917, 922 (finding misuse where party used protected information as basis for filing separate lawsuit); *Mahboob v. Educ. Credit Mgmt. Corp.*, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), *rep. and rec. adopted*, 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021) (same).

As mentioned, plaintiffs' counsel in other State Farm cases have referenced the substance of productions in other matters as responsive to a discovery request and leveraged the contents of specific Bates-stamped materials to attempt to define the scope of discovery sought in later cases--regardless of those materials relate to different timeframes or issues not present on those subsequent matters. (Stone Decl., ¶16-17 & Ex. G.) This constitutes misuse. *See* *Cleveland v. Ludwig Inst. for Cancer Research Ltd.*, 2021 WL 4993025, at *11–12 & n.6 (S.D. Cal. Oct. 27, 2021) (finding violation where counsel "purport[ed] to *represent* the contents" of confidential documents produced in earlier litigation) (italics added).

This conduct also highlights another type of misuse that can result from the disclosure of batched information such as lists of confidential documents—"mining" of State Farm's confidential productions as "source material" for this action and potentially other actions years after those productions were made. *See* *In re eBay Seller Antitrust Litig.*, 2010 WL

2106004, at *1–2 (N.D. Cal. May 25, 2010) ("mining" a confidential production as "source material" for another action would violate protective order); *Concord Music Grp.*, 2025 WL 3773754 at *2–3 (N.D. Cal. Dec. 31, 2025) (a party should not be "given carte blanche to 'mine' through all the information produced . . . to support any potential claims . . . in separate litigation").

Without protecting the lists of specific document titles and descriptions, such conduct will remain "devilishly hard to police" absent further investigation into Plaintiff's counsel's practices. *In re eBay Seller Antitrust Litig.*, 2010 WL 2106004, at *2. The Court can prevent that outcome now by extending the confidentiality scope of the protective order to the compilation of document titles—whether in discovery responses or in lists put together by plaintiff's counsel.

## IV. CONCLUSION

For all the reasons detailed above and in the accompanying declarations, State Farm requests the Court grant its request to retain the confidentiality of titles and descriptions of State Farm's confidential training and resource material included in its Supplemental Responses to Plaintiff's Special Interrogatories, Set One and Requests for Production, Set One and Two served on July 16, 2026 and State Farm's Amended Supplemental Responses to Plaintiff's Special Interrogatories, Set One and Requests for Production, Set One and Two served on August 7, 2026.

Dated: August 20, 2026 PACIFIC LAW PARTNERS, LLP

By *___/s/ Sandra E. Stone___*
SANDRA E. STONE
Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY