United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBRA COHEN TUDOR,<br>Plaintiff,<br>v.<br>STATE FARM GENERAL INSURANCE COMPANY,<br>Defendant. | Case No. 22-cv-01113-RFL (PHK)<br>**DISCOVERY MANAGEMENT CONFERENCE ORDER NO. 2**<br>Re: Dkt. No. 141 |

All discovery matters in this case have been referred to the undersigned. [Dkt. 57]. Pending before the Court are several discovery status reports, administrative motions to seal, and discovery letter briefs regarding various disputes for which the Parties seek the Court's guidance. [Dkts. 126, 127, 128, 131, 134, 135, 140, 141, 142]. The Court held a Discovery Management Conference ("DMC") on September 9, 2026. Having considered the papers and argument of counsel at the DMC, the Court issues this Discovery Management Order memorializing its verbal directives to the Parties as stated on the record at the September 9 DMC (which are hereby incorporated by reference).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to

tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

///

**DISCUSSION**

After considering the submissions of the Parties both in briefing and at the DMC, and pursuant to the Court's authority to manage discovery, the Court resolves the Parties' disputes on the following issues:

**<u>Timeliness</u>**

At the hearing, the Court noted indications in the record that the Parties are exchanging drafts of joint documents for the first time the afternoon before a filing is due. The Parties are **ORDERED** to exchange the first round of drafts of their sections for any joint filing at least two days in advance of the due date, and preferably more. Any Party's draft section of a joint filing sent for the first time to the other party in the afternoon before the filing date will not be accepted.

Furthermore, in light of the confusion surrounding the submission dates of joint reports, the Parties are **ORDERED** to submit joint reports **at least five business days in advance** of each Discovery Management Conference.

**<u>Confidentiality of Exhibits B and G</u>**

The Court heard oral argument on State Farm's motion to maintain the confidentiality designation (under the Protective Order) for Exhibits B and G which were previously filed in connection with the Parties' previous Joint Discovery Management Conference Report (Dkt. 108). [Dkt. 131]. Without revealing the substance of those exhibits, those exhibits constitute compilations of the titles of dozens of training materials used by State Farm to train its employees. Exhibit B is a list of these materials which include "Course Title" (using State Farm's title verbatim), "Course ID" (using State Farm's course identification numbers), "Type", "Employee(s)", and "State Farm Transcript Page(s)". [Dkt. 131 at 9]. Exhibit G is a list of 89 documents including "Document Title" and date. *Id.* In support of its motion, State Farm submitted the declaration of a State Farm Learning Team Manager in the Claims Training – P&C Department. [Dkt. 131-5].

At the hearing, State Farm argued that public disclosure of the compilations in Exhibits B and G would cause State Farm competitive harm if they were released to the public. While State Farm concedes that each individual title of each training document in the lists is not confidential standing alone, State Farm argues (and its declarant attests) that the compilation provides

information which would serve as a blueprint for competitors in how to improve training and management of their claims operations. *See* Dkt. 131-5 at ¶¶ 10-17. At oral argument, Plaintiff conceded they have no reason to believe that State Farm's declarant was unqualified to provide this sworn declaration.

In opposition, Plaintiff argues that the declaration is too general and not specific enough to satisfy the legal requirements to establish confidentiality under the Protective Order. As noted, the declaration provides multiple paragraphs to explain how and why State Farm treats its training materials as confidential and why the lists of titles of these materials are sufficient as a compilation to give a competitor an unfair advantage if that competitor were to attempt to adopt State Farm's training procedures. *See* Dkt. 131-5 at ¶¶ 10-17. Other than characterizing the declaration as not sufficiently specific, Plaintiff provided no specifics on what detailed information was lacking.

Further, Plaintiff identified no harm or prejudice to herself if these two exhibits remained confidential under the Protective Order. Plaintiff's counsel and expert witnesses are able to access and use the exhibits in this litigation. Plaintiff's primary argument here relied on the general policy of public access to court records and the general argument that this public policy interest is harmed by maintaining confidentiality. That argument is unavailing because, if accepted, virtually all confidentiality designations under a Protective Order would be subject to attack without a showing of any specific prejudice to the actual opposing party in the case.

Based on the record presented, the Court finds sufficient evidence was provided to maintain the confidentiality designation for Exhibits B and G on the grounds that the compilations are confidential. Accordingly, Defendant's motion to retain confidentiality [Dkt. 131] is **GRANTED.**

However, as noted at the hearing, this ruling does not apply to the titles of each underlying document (separate and apart from their inclusion in these compilations). Titles in the abstract are not necessarily confidential. *See Eolas Techs. Inc. v. Microsoft Corp.*, 2002 WL 31375531, at *31 (N.D. Ill. Oct. 18, 2002) (finding no violation of a protective order by the disclosure of subject lines and titles of documents). The Court's ruling today only applies to Exhibits B and G, and shall not be construed to extend to any underlying documents. If the Parties have a dispute in future regarding whether a specific title of a specific document is confidential, Defendant bears the burden of

United States District Court
Northern District of California

establishing how and why that title itself constitutes confidential information.

**ESI Protocol**

As ordered at the previous DMC, the Parties were directed to finalize their proposed ESI Protocol so that the Parties could then finalize production of any ESI sought. As reported in advance of this DMC, the Parties have been unable to finalize the ESI Protocol. The Parties have engaged in exchanges and meet and confers, but have not completed these negotiations. The Court provided guidance to the Parties on some of the issues apparently causing delay in finalizing the ESI Protocol, which the Court trusts the Parties will take into account when completing their negotiations. For example, the Court noted at the DMC that the ESI Protocol should be party neutral, but that such guidance does not prejudge any objections by either Party as to whether a specific ESI request is not proportional to the needs of the case or otherwise improper.

**The Parties are ORDERED to continue to reasonably and promptly communicate and meet and confer to submit a Joint Proposed ESI Protocol by no later than September 23, 2026.** *See Litton v. Roblox Corp.*, 2026 WL 1483493, at *4 (N.D. Cal. May 27, 2026). **To the extent the Parties have remaining disputes over the ESI Protocol, the Parties SHALL file by no later than September 23, 2026:** (1) a Joint Redline of the Joint Proposed ESI Protocol (compiled jointly in a single document showing the Parties respective competing proposed language next to each other at each disputed location and comparing the proposed ESI Protocol against the Court's Model ESI Protocol), (2) declarations from counsel explaining the substantive differences between the Proposed Joint ESI Protocol from the Model ESI Protocol, and (3) a Further Joint Discovery Letter Brief (complying with the Court's Standing Discovery Order) which sets forth the Parties' arguments on the issues remaining in dispute as to the specific competing disputed language (including why that Party's proposed edits should be adopted and not the competing language from the other Party). Any additions the Parties do not agree upon **SHALL** be denoted in the Joint Redline with different assigned colors for the Court's ease of reference; one Party's edits shall all be in green, the other Party's shall all be in red. To the extent any edits from either Party do not have competing language from the other Party, the Court will construe such edits as unopposed.

As noted at the hearing, the Court cautions against excessive or unnecessary deviations from

the Model ESI Protocol. The Court has broad authority and discretion to assist the Parties in resolving ESI disputes. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002); *see Crosby v. Amazon.com, Inc.*, No. 21-1083-JCC, 2022 WL 522953, at *1 (W.D. Wash. Feb. 22, 2022) ("Because the parties are unable to come to an agreement regarding all terms contained within an ESI discovery agreement, the Court will, in its discretion, assist the parties in doing so."); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2019 WL 5622453, at *7 (M.D. Pa. Oct. 31, 2019) ("As part of our oversight responsibilities in discovery we have the discretion to modify ESI search term parameters.").

In light of the Court's Order on this ESI Protocol issue, as a procedural matter Plaintiff's motion to adopt Plaintiff's proposed ESI protocol [Dkt. 141] is **DENIED WITHOUT PREJUDICE**.

**<u>Document Production and Interrogatories</u>**

The Parties additionally discussed the progress of State Farm's production related to water initiative documents, training transcripts, and personnel files. Accordingly,

Defendant is **ORDERED** to complete production of the personnel files by no later than **September 18, 2026.**

Plaintiff is **ORDERED** to pick the final, third year of water initiative documents **by September 23, 2026.** Plaintiff's previously selected years of 2016 and 2023 may be altered only upon a showing of good cause.

Defendant is **ORDERED** to contact the potential custodians identified by Plaintiff and either confirm they do not have any responsive ESI or include them as a custodian for purposes of the ESI searches **by September 23, 2026.**

**The Parties are ORDERED** to continue to meet and confer promptly and reasonably to resolve any remaining dispute related to State Farm's responses to Set One Interrogatories.

**<u>Depositions</u>**

At the hearing, Plaintiff indicated that she is waiting on the production of documents to be able to notice depositions. As the Court noted, that entails potential delay which could render scheduling of the depositions difficult in light of the number of potential deponents and the holidays.

United States District Court
Northern District of California

Accordingly, Defendant is **ORDERED** to provide Plaintiff with dates that each of the identified witnesses and attorneys are **not** available for depositions by **Friday, September 18, 2026**. Plaintiff is **ORDERED** to provide Defendant with the same information as it relates to counsel who will be taking each of these depositions by **Friday, September 18, 2026**.

After identifying dates when each witness is not available for deposition, the Court **ORDERS** the Parties to take diligent and appropriate steps to reserve dates for their depositions particularly if only a small number of dates appear available for any particular witness. The Court directs counsel not to wait until the ESI and other documents are all produced before scheduling the depositions, but rather to take reasonable and diligent steps to cooperate and coordinate in scheduling the depositions to mitigate risk of disruption of the case schedule further.

**CONCLUSION**

The next DMC is **SET** for **Friday, October 23, 2026 at 2:00 PM**, in-person in Courtroom F. The Parties **SHALL** file their next Joint Discovery Management Conference Report on **October 16, 2026**.

All other rulings, directives, and deadlines set verbally at the DMC are incorporated by reference to the extent not expressly discussed in the instant DMO.

This Order **RESOLVES** Dkts. 126, 127, 128, 131, 134, 135, 140, 141, and 142.

**IT IS SO ORDERED.**

Dated: September 10, 2026

PETER H. KANG
United States Magistrate Judge