United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEBRA COHEN TUDOR,

Plaintiff,

v.

STATE FARM GENERAL INSURANCE COMPANY,

Defendant.

Case No. 22-cv-01113-RFL (PHK)

**DISCOVERY MANAGEMENT ORDER NO. 4**

Re: Dkt. No. 161

All discovery matters in this case have been referred to the undersigned. [Dkt. 57]. The Court held a Discovery Management Conference ("DMC") on October 27, 2026. Having considered the papers and argument of counsel at the DMC, the Court issues this Discovery Management Order memorializing its verbal directives to the Parties as stated on the record at the October 27, 2026 DMC (which are hereby incorporated by reference).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the

United States District Court
Northern District of California

relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

After considering the disputes identified in the Joint DMC Report [Dkt. 161] and at the DMC, and pursuant to the Court's authority to manage discovery, the Court resolves the Parties' disputes on the ripe discovery issues as identified in the DMC Report and as raised at the DMC:

**Claim-Specific Records and ESI [Dkt. 161 at 6-10]**

A central dispute between the Parties is whether State Farm has produced the entirety of its electronic claim file for the claim at issue. Although State Farm has made repeated representations that it has done so, Tudor argues without specificity that there appear to be portions of the claim file being withheld. State Farm again represented on the record at the DMC that State Farm has produced the entire electronic claim file.

The only specific part of the electronic claim file identified by Tudor relates to instant messages (IM's) between certain employees at or around the time of the denial of the claim. State Farm represented that it searched for and produced all IM's relating to the claim at issue. Tudor identified a single IM sent from Ms. Siu based on which Tudor argues the IM does not identify the recipient(s). Further, Tudor asserts that this IM references a potential telephone call between two State Farm employees as a followup to the discussion in the IM and at the DMC identified the potential participants in this phone call as two any of the following: Ms. Siu, Ms. Epstein, Mr. Kirby, and/or Mr. Weiss. Tudor argues that no documents (including emails and IM's) relating to this followup phone call were produced, and requests production of phone logs of these four persons. At the DMC, State Farm represented to the Court that, if any of these witnesses testify at their upcoming depositions that this phone call occurred, then State Farm will not dispute that the conversation or phone call occurred. Thus, the need for the phone logs raised by Tudor (to establish that the phone call occurred) is obviated entirely and the request for "metadata" and phone logs going back several years is accordingly not proportional to the needs of the case. Accordingly, the Court **DENIES** Tudor's motion to compel production of phone logs and metadata of a phone conversation between two of the four identified witnesses at the time of Ms. Siu's IM.

However, in order to cut to the chase to determine whether or not there is evidence regarding this phone call, State Farm is **ORDERED** to ask Ms. Siu, Ms. Epstein, Mr. Kirby, and Mr. Weiss if they remember a phone call on or about the day of Ms. Siu's IM regarding the claim at issue. State Farm agreed to and thus is **ORDERED** to inform counsel for Tudor (by email or correspondence without the need for a formal discovery request) as to the results of this inquiry with these four potential witnesses. State Farm **SHALL** complete its inquiry promptly and communicate the results

promptly to counsel for Tudor, and in any event that investigation **SHALL** be completed prior to the due date for the next DMC Status Report (and thus reported on in that DMC Status Report, due November 20, 2026).

**Custodian Directive [Dkt. 161 at 10-13]**

The Court previously ordered State Farm to contact potential custodians (specifically identified by Tudor) and either confirm that they have no responsive ESI or include them as a custodian for purposes of ESI searches. [Dkt. 143 at 7]. On September 4, 2026, Tudor identified eleven potential custodians. At the DMC, State Farm attested that their investigation into the eleven identified custodians is substantially complete and represented to the Court that, based on that investigation, State Farm represents that (a) one of the named potential custodians is a name which no one at State Farm is familiar with and does not appear in directories of State Farm's current and former employees, (b) three of the named potential custodians were investigated and it was determined that they are former State Farm employees and thus do not have possession of documents or ESI which differs from the documents and ESI already produced, and (c) the remaining seven potential custodians (who are current employees) were contacted and they are not in possession of any documents that are not duplicative of what was already produced. State Farm further acknowledged that it would produce documents in the event further conversations identify any responsive documents.

Tudor argued that State Farm's efforts were not a "full investigation" by which Tudor sought an Order directing counsel for State Farm (or their agents) to manually search the files of all eleven named persons. This request is not proportional to the needs of the case. As stated at the previous hearing on this issue which resulted in the Court directing State Farm to make these inquiries, the purpose of making these inquiries was to determine if there is any basis to believe that custodians ***over and above*** those persons from whose files documents have already been produced (and ***over and above*** State Farm's production of non-custodial files) could reasonably be found to have any addition responsive documents in their possession. The Court did not order a "full investigation" into these additional eleven custodians because State Farm has already produced thousands of pages of documents. The reasonable step the Court ordered (to make inquiry of Plaintiff's chosen and



United States District Court
Northern District of California

identified additional potential custodians) was a proportional step before requiring State Farm to expend resources searching for documents which may not exist. Accordingly, Plaintiff Tudor's request for a "full investigation" into the files of these eleven additional potential custodians (one of whom does not even appear to exist, which undermines the Court's confidence in Tudor's diligence and efforts to identify these potential custodians) is therefore **DENIED** as not proportional to the needs of the case and moot in light of counsel for State Farm's report and representations as to the results of its inquiries.

More troubling is Plaintiff Tudor's unilateral attempt to further expand the list of identified potential custodians from eleven to forty-three. After Tudor identified the original eleven named persons, Tudor identified 32 additional persons who might be custodians and from whom Tudor demanded the same full investigation and inquiry. In the DMC Status Report and at the DMC, Tudor identified no specific basis for adding these additional potential custodians other than a mere desire and suspicion that they might have responsive documents. The Court presumes that Tudor identified the first eleven potential custodians based on a then-good faith belief after reasonable investigation that those were the primary persons from whom any additional documents could be sought. Common sense indicates that Tudor would have identified the most likely or most desired custodians among that original group of eleven. The Court did not provide Tudor with an open-ended invitation to keep adding potential custodians to this process. As noted above, the fact that one of the original eleven persons named by Tudor is a name no one at State Farm recognizes undercuts Tudor's counsel's credibility for seeking to add 32 more people to the list. Facially, Tudor's seriatim adding more people to the list on September 11 and then again on September 18 gives the appearance of a fishing expedition.

For the reasons stated at the DMC, and to the extent Tudor is attempting now to expand the Court's prior order to include a more fulsome search ("full investigation") or a broader list of additional potential custodians over and above the originally identified eleven people, Tudor's request is **DENIED**.

**Clarification on Confidentiality Designations [Dkt. 161 at 14].**

Tudor argues that State Farm has designated certain pages of its discovery responses as

Confidential under the Protective Order. States Farm explains that it did so because those discovery responses include the titles of documents which State Farm considers confidential. As stated in the Joint DMC report and repeated at the DMC, State Farm agreed to amend its discovery responses to remove references to document titles and replace them with Bates numbers – and as result will also remove the confidentiality designations on those pages of the discovery responses, because Bates numbers are not confidential. As State Farm indicated, this process will moot this dispute and at the DMC Plaintiff did not object or contradict this conclusion. Accordingly, State Farm is **ORDERED** to amend its discovery responses as agreed and to serve the amended responses (with confidentiality designations removed) **by Friday, October 30, 2026.**

**Verification of Interrogatories [Dkt. 161 at 18-19].**

In a similar vein, Tudor argues that certain of State Farm's interrogatory responses were not verified. At the DMC, State Farm agreed to provide verifications for substantive responses that lack verification. As with the previous dispute, this will moot and resolve the dispute. Accordingly, State Farm is **ORDERED** to serve verified responses to the identified interrogatories by **November 13, 2026**.

**Scheduling Depositions**

The Parties represented at the DMC that they have exchanged proposed deposition dates, and that the deposition dates for Mr. Kirby, Ms. Epstein, and Ms. Siu are set. State Farm further stated that it is in the process of confirming the availability of Mr. Weiss, Ms. Pressnall, and Mr. McCray for the dates recently proposed by Plaintiff for those depositions.

Tudor, however, expressed concern that depositions would have to be postponed due to delayed or withheld document production. The Court reemphasizes here, as it did at the DMC, that outstanding production of documents is not a reason to delay the mere scheduling of depositions. At the DMC, the Parties confirmed that (based on the Court's rulings on discovery disputes at the DMC and in prior Orders such as the ESI Order), the only identified documents remaining for State Farm to produce are (a) the "water documents" (including "water loss documents") from 2020; and (b) training materials which Tudor only recently raised as allegedly missing from prior productions. While Plaintiff argued vaguely that there might be additional documents from the custodial files

United States District Court
Northern District of California

already produced which Plaintiff believes are missing from production, the Court ordered the Parties to finish their meet and confer on any such documents (if any) promptly (including at an in-person meet and confer the Court ordered the Parties to undertake immediately after the DMC, because they were unable to meet and confer in person prior to the DMC as previously ordered, Dkt. 163).

The Court notes that the last day to notice depositions is December 31, 2026 and the fact discovery cutoff is February 1, 2026. The Court resolved the document production issues at the DMC and in this Order so as to ensure that document productions are completed to a sufficient extent that scheduling and taking of depositions prior to the fact discovery deadline is not negatively impacted. Wise and experienced counsel understand when it is time to shift from paper discovery to focusing on taking the final depositions in a case. The Court expects both Parties to make every effort to complete all document discovery and to schedule (and then take) the depositions of the six or so fact witnesses at issue, and to use best efforts to finish all fact discovery by the fact discovery cutoff.

Accordingly, the Court **ORDERS** the Parties to provide a finalized deposition schedule in the next Joint DMC Status Report which the Parties are **ORDERED** to file on **November 20, 2026**.

## CONCLUSION

To the extent the Joint DMC Report raises issues that are not discussed herein or at the October 27 DMC, such "unripe" issues are the subject of the further meet and confers discussed above. The Court provided guidance at the DMC on some of these unripe disputes in order to facilitate the Parties' discussions. The undersigned makes no express rulings on any such unripe issues other than to Order the Parties to continue to make conscientious efforts to attempt to resolve or at least narrow any other disputes that may remain.

The next DMC is **SET** for **Tuesday, December 1, 2026 at 1:30 PM**, in-person in Courtroom F. The Parties **SHALL** file their next Joint Discovery Management Conference Report on **November 20, 2026**.

This Order **RESOLVES** Dkt. 161.

**IT IS SO ORDERED.**

Dated: October 28, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California